Argued and submitted December 18, 1987, affirmed May 18, 1988

## STATE OF OREGON,
*Appellant,*

*v.*

## CHARLES H. HANSEN,
*Respondent.*

(CR86-11-214; CA A43451)

754 P2d 604

Rives Kistler, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Christopher Keusink, Brookings, argued the cause for respondent. With him on the brief was Coutrakon & Babin, P.C., Brookings.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

JOSEPH, C. J.

Van Hoomissen, J., specially concurring.

---

* Joseph, C. J., *vice* Young, J., deceased.

## JOSEPH, C. J.

Defendant is charged with sexual abuse in the first degree. ORS 163.425. He moved to suppress all evidence on the ground that it resulted from a violation of the psychotherapist privilege or of defendant's constitutional right not to be compelled to testify against himself. Or Const, Art I, § 12. The trial court suppressed the evidence, the state appeals and we affirm.

We are bound by the trial court's finding of facts, if there is evidence to support them. *Ball v. Gladden,* 250 Or 485, 487-88, 443 P2d 621 (1968). The trial court found the facts which we recite, and all of them are supported by the evidence.

Defendant attempted to commit suicide. At the request of his doctor, he saw Davis, a Curry County mental health therapist, for diagnosis or treatment. At their first meeting, Davis assured defendant that any conversations between the two would be confidential. Defendant proceeded to discuss his sexual abuse of a young girl. After that first meeting, Davis concluded that he had a legal and a moral duty to report the abuse.[1] At their second meeting, Davis informed defendant that he intended to make a report. Davis told defendant that he should turn himself in or Davis would. Defendant would not have reported the sexual abuse if Davis had not told him that. Defendant and Davis then went to the police station, and defendant confessed. The police did not coerce defendant.

The trial court held that the confession was involuntary and suppressed all evidence resulting from the confession, including the victim's identity and her statements to the authorities. On appeal, the state concedes that the confession was involuntary but contends that the trial court suppressed more than it should have. Specifically, it contends that the court erred in suppressing the victim's identity and her statements.[2] It argues that discovery of the victim's identity was sufficiently "attenuated" after the involuntary confession as

---

[1] The state concedes that Davis' conclusion was legally incorrect.

[2] Because we hold that the victim's identity was properly suppressed, we need not separately address the suppression of her statements.

to be admissible.[3] The state does not assert that there was any independent source which might have led the police to identify the victim.

Whether evidence obtained as the fruit of illegally obtained evidence is admissible if the illegality is sufficiently attenuated has never specifically been decided in this state. No Oregon case (or any other case) that our research has revealed explains clearly the difference between the idea of derivation from an independent source and the attenuation exception. Indeed, it appears that attenuation cases really involve nothing more than an independent source or a lapse in time with a weak causal connection between the illegal activity and the discovery of the evidence. Cases which the state claims apply the attenuation doctrine involve an event later than and independent of the illegal conduct which diminishes the legal, factual or logical connection between the evidence in question and the illegality. For example, in *State v. Snyder,* 72 Or App 359, 695 P2d 958, *rev den* 299 Or 251 (1985), the police discovered a valid arrest warrant for the defendant after they had already stopped him, had taken him to the police station and had seized evidence in a search of his personal effects. We held that the discovery of the warrant purged the taint of illegality. *See also State v. Dempster,* 248 Or 404, 434 P2d 746 (1967). In both *Snyder* and *Dempster,* discovery of a valid warrant was an intervening act which was held to make it possible to ignore the actual causal connection between the evidence and the illegality. There was no intervening act here.

The state also cites *United States v. Ceccoloni,* 435 US 268, 98 S Ct 1054, 55 L Ed 2d 268 (1978), and *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).[4] Neither case is helpful here. In *Wong Sun* the court held that a statement that Wong Sun made when he voluntarily returned several days after his illegal arrest was not the fruit of the poisonous tree. 371 US at 491. By contrast, in this case the victim did nothing which would or could have revealed her identity or even whether a crime had been committed. Her subsequent decision to testify is not, as the state suggests,

---

[3] On appeal, the state concedes that the evidence is not admissible by reason of its having an independent source or because it would inevitably have been discovered.

[4] For an exhausting exhaustive review of *Wong Sun, see* Broeder, "Wong Sun v. United States: A Study in Faith and Hope," 42 Neb L Rev 483 (1963).

comparable to Wong Sun's return to the police station. As far as the record shows, the victim would never have decided to testify unless the police had approached her. They had no reason to do so except the knowledge that they gained from defendant's involuntary confession.

In *Ceccoloni,* the Supreme Court found that the witness whose testimony the defendant sought to suppress testified as a result of her own free will, that there was a substantial lapse in time between the illegality and her decision to testify and that the relationship between the witness and the defendant was well known to the investigating officers independently of the illegality. 435 US at 279. Here, the relationship between the victim and defendant would never have been known to the police if defendant had not confessed. The investigator's knowledge of the witness' relationship to the defendant in *Ceccoloni* is one type of event that could attenuate illegality. There was no knowledge or other event to attenuate the connection with the illegal act here.

■ Finally, the state argues that suppressing the evidence in this case applies the exclusionary rule more broadly than necessary to serve its function. The argument is based on the state's misunderstanding of the reasons for suppressing illegally obtained evidence. The purpose of the exclusionary rule is not limited to deterring police misconduct. Its primary purpose is to protect constitutional rights. *State v. Tanner,* 304 Or 312, 315, 745 P2d 757 (1987).[5] Under the facts of this case, there is no way to protect defendant's rights other than to suppress the victim's identity as the direct fruit of his involuntary confession.

Affirmed.

**VAN HOOMISSEN, J.,** specially concurring.

This case involves the fruit of the poisonous tree doctrine. I agree with the majority result. I write specially to

---

[5] *Tanner* involved Article I, § 9, and this case concerns Article I, § 12. We see no basis for protecting a defendant's right not to be compelled to testify against himself less than his right to be free of illegal searches or seizures. To be sure, the derivative use of an involuntary statement might be subject to greater restrictions. *See Kastigar v. United States,* 406 US 441, 92 S Ct 1653, 32 L Ed 2d 212 (1972); *State v. Soriano,* 68 Or App 642, 684 P2d 1220, *opinion adopted* 298 Or 392, 693 P2d 26 (1984).

disassociate myself from the majority statement that the primary purpose of the exclusionary rule is to protect constitutional rights. 91 Or App at 193, *citing State v. Tanner,* 304 Or 312, 315, 745 P2d 757 (1987). I agree with Judge Jones' dissent in *Tanner.* 304 Or at 326.