Argued and submitted July 26, reversed and remanded for further proceedings November 8, 1989, reconsideration denied February 23, petition for review allowed May 22, 1990 (310 Or 70)
See later issue Oregon Reports

# STATE OF OREGON,
*Appellant,*

*v.*

# GEORGE EDWARD DAVIS,
*Respondent.*

(C 88-01-30035; CA A50571)

781 P2d 1264

argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Janet Hoffman, Portland, argued the cause for respondent. With her on the brief were Hoffman, Matasar & Glaeser, Portland, and Scott B. Nichols, and Lindsay, Hart, Neil & Weigler, Portland.

Before Joseph, Chief Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

The state appeals from a pre-trial ruling granting defendant's motion to suppress on the ground that defendant's arrest without a search warrant was constitutionally prohibited. We reverse.

In May, 1987, defendant was arrested for robbery and conditionally released pending trial. In July, 1987, he failed to appear in court, and a bench warrant was issued for his arrest. In January, 1988, defendant was charged with murder. ORS 163.115. The police received information that he was staying at his mother's home in Mississippi. Multnomah County detectives went to Mississippi to arrest him on the outstanding warrant for failure to appear on the robbery charge. In Mississippi, they obtained a warrant for his arrest as a fugitive. Mississippi law enforcement officials executed the fugitive warrant by entering defendant's mother's house without her consent and without a search warrant. Once in the house, they arrested defendant, who was staying there as a guest.[1] After the arrest, the Multnomah County detectives entered the house and took custody of defendant. Approximately three hours later, they interviewed him at a Mississippi Highway Patrol office, after giving him *Miranda* warnings, and obtained an incriminating statement. While the detectives and defendant were returning to Oregon, a second conversation, regarding the sale of cocaine, took place. Defendant seeks to suppress both statements.

Defendant argues that the entry into his mother's home was unlawful, because the police did not have a search warrant. *See Steagald v. United States,* 451 US 204, 101 S Ct 1642, 68 L Ed 2d 38 (1981); *State v. Munro,* 96 Or App 238, 772 Pd 1353 (1989). Assuming, without deciding, that defendant is correct, the determinative issue is whether the interrogation at the patrol office was "tainted" by the unlawful entry. *See State v. Snyder,* 72 Or App 359, 695 P2d 958, *rev den* 299 Or 251 (1985). The trial court refused to apply *Snyder,* ruling that it was distinguishable, because the arrest warrant there was discovered after the defendant had been stopped. We fail to

---

[1] The state challenges the trial court's finding that defendant was a guest. Because there is evidence in the record to support the finding, we are bound by it. *See State v. Tanner,* 304 Or 312, 323, 745 P2d 757 (1987); *Ball v. Gladden,* 250 Or 485, 487-88, 443 P2d 621 (1968).

see what difference that fact makes. The point of *Snyder* is that legal detention may attenuate the connection between a prior illegality and an interrogation, depending on the circumstances.

The burden is on the state to prove that, despite an illegal entry, the incriminating statements were acts of defendant's free will and that the initial taint of illegality was purged. *State v. Olson,* 287 Or 157, 166, 598 P2d 670 (1979). The trial court found:

> "Defendant was fully and effectively advised of his *Miranda* rights. He understood them. He knowingly and intelligently waived his rights to silence and to counsel. He was not coerced physically or psychologically. He freely talked with the detectives after full and proper advice of his rights. There was no *Miranda* or Art. I, § 12 violation requiring suppression."

Although we are not bound by the conclusions of the trial court, we are bound by its historical findings of fact, if there is evidence to support them. *See State v. Tanner, supra* n 1; *Ball v. Gladden, supra* n 1. When the findings are considered in the light of the lack of causal connection between the illegal search and the interrogation, three hours later, and the intervening fact of the execution of a lawful fugitive arrest warrant, any taint from the unlawful entry was adequately attenuated. *See State v. Hanson,* 91 Or App 189, 754 P2d 604 (1988). The trial court erred in granting defendant's motion to suppress his statements made in Mississippi.

 Defendant also argues that incriminating statements that he made during the interrogation at the patrol office should be suppressed, because

> "the police obtained [the] statements in violation of his Fifth and Sixth Amendment rights under the Federal Constitution and Article I, Section 11 of the Oregon Constitution. [Defendant's] Sixth Amendment and Article I, Section 11 rights were violated when the detectives interrogated him regarding charges for which he had counsel."

However, defendant was never interrogated in Mississippi by police about the robbery charges. Although a suspect's right to counsel during interrogation may be violated if an attorney has previously been appointed or retained and the suspect is

interrogated about that crime without the counsel being notified, the suspect's right to counsel is not violated if the interrogation concerns a factually unrelated crime. *See State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983).

■　　　Defendant also argues that incriminating statements made during the return trip to Portland should be suppressed. The trial court found:

> "[D]uring the [return] trip [one of the detectives] joked with defendant about a person named Chip Clayton, who is supposed to be a Portland member of the Crips gang and a cocaine dealer. During the return trip defendant was never readvised of his *Miranda* rights. The joking conversation resulted in an admission by defendant that he sold 'rock' cocaine for Chip Clayton and that Clayton was not such a big shot as he claimed to be."

Defendant argues that his statements were involuntary, because more than twenty-four hours had passed since the initial *Miranda* warnings and interrogation. However, a *Miranda* warning need not, as a matter of law, be repeated each time that the interrogation moves to a different crime. *See State v. Davidson,* 252 Or 617, 620, 451 P2d 481 (1969); *State v. Rivas,* 99 Or App 23, 29, 781 P2d 364; *see also Miller v. United States,* 396 F2d 492, 495-96 (8th Cir 1968), *cert den* 393 US 1031 (1969). As to whether an "interrogation" even occurred, *i.e.,* whether the detective should have reasonably known that his "joking" would likely elicit an incriminating response, the trial court made no findings. *See State v. Fitzgerald,* 60 Or App 466, 471, 653 P2d 1289 (1982); *Rhode Island v. Innis,* 446 US 291, 301, 100 S Ct 1682, 64 L Ed 2d 297 (1980). Also, we are unable to determine from the trial court's opinion whether its conclusions that defendant's statements were voluntary apply to the return trip conversation. On remand, the trial court should reconsider this issue and make appropriate findings of fact and conclusions of law.

The state's remaining assignment of error is rendered moot by our disposition of this case.

Reversed and remanded for further proceedings not inconsistent with this opinion.