Argued and submitted September 6, 1990, decision of Court of Appeals affirmed in part on different grounds, order of circuit court reversed, and case remanded to circuit court for further proceedings June 5, 1992

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## GEORGE EDWARD DAVIS,
*Petitioner on Review.*

(CC A8801-30035; CA A50571; SC S36889)

834 P2d 1008

Janet Lee Hoffman, of Hoffman, Matasar & Glaeser, Portland, filed the petition and argued the cause for petitioner on review. With her on the petition were Lawrence Matasar and Scott B. Nichols, of Lindsay, Hart, Neil & Weigler, Portland.

Timothy A. Sylwester, Assistant Attorney General, Salem, filed the response and argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson,** Chief Justice, and Peterson,*** Gillette, Van Hoomissen, Fadeley, and Graber, Justices.

GILLETTE, J.

** Carson, C. J., Chief Justice when case decided.

*** Peterson, J., Chief Justice when case argued.

## GILLETTE, J.

In this murder prosecution, the trial court granted defendant's pretrial motion to suppress certain statements, including admissions of the murder, made by defendant to Portland police officers. At the time the statements were made, defendant was in custody out-of-state. On appeal by the state, the Court of Appeals reversed, holding that the statements were admissible. *State v. Davis*, 99 Or App 358, 781 P2d 1264 (1989). We affirm the decision of the Court of Appeals, but for reasons different than those relied on by that court.

Defendant was arrested by Mississippi law enforcement officers at his mother's home in Mississippi. The officers had no search warrant for defendant's mother's home, and there was no initial consent to enter the home and to search for the defendant. The arrest was made under a fugitive warrant, issued in Mississippi, that was based on underlying arrest warrants issued in Oregon for defendant's failure to appear for trial on robbery charges that are unrelated to the murder.

After he was arrested, defendant was questioned in Mississippi by Portland police officers. The Portland officers had come to Mississippi to return defendant to Portland and to question him as a suspect in the Portland murder. During that questioning, and after *Miranda*[1] waivers, defendant made statements admitting the murder. Defendant did not ask for counsel, although counsel had been appointed previously for defendant in the pending Oregon criminal prosecution on the robbery charges, and that counsel was not contacted by the officers before the questioning in Mississippi.

After a hearing on defendant's motion to suppress, the trial court concluded that defendant had abandoned his appointed counsel and that the statements were not obtained in violation of defendant's state or federal constitutional rights to counsel or to be free from compelled self-incrimination. The trial court nonetheless suppressed defendant's statements to the Portland officers as the product of an

---

[1] *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

unlawful arrest, concluding that a search warrant was required for the entry by the Mississippi officers into defendant's mother's home. Because the officers had only an arrest warrant, the trial court ruled that their arrest of defendant was unlawful and that any statements obtained from him after that arrest were a product of the illegal arrest that must be suppressed.

The state appealed. ORS 138.060(3). The Court of Appeals assumed, without deciding, that the entry into defendant's mother's home and defendant's arrest were unlawful without a search warrant, but concluded that defendant's subsequent statements were nonetheless admissible because they were voluntary and the taint of the illegal arrest had been purged. *State v. Davis, supra*, 99 Or App at 360-61. The Court of Appeals further concluded, citing *State v. Sparklin*, 296 Or 85, 672 P2d 1182 (1983) (discussed *infra*), that the interrogation on the uncharged murder, which was factually unrelated to the pending robbery charges, did not violate defendant's rights to counsel under Article I, sections 11 or 12, of the Oregon Constitution, or the Fifth or Sixth Amendments to the Constitution of the United States. *State v. Davis, supra*, 99 Or App at 361-62.

We hold that the Oregon constitutional protection against unreasonable searches and seizures, Article I, section 9, of the Oregon Constitution, includes the right in a criminal prosecution in Oregon to be free from the use of evidence that has been obtained in violation of the defendant's rights prescribed by that provision and that, for these purposes, action by state officers in Mississippi is the same as action by the state officers in Oregon. In this case, however, we further hold that the arrest of defendant in defendant's mother's home without a search warrant or consent for the entry did not violate defendant's state or federal constitutional rights, because the officers were executing a valid arrest warrant.

With respect to the question of interrogation concerning one crime while defendant is represented by counsel with respect to an unrelated crime, we hold that defendant's *Miranda* waivers were voluntary. They were not obtained in violation of defendant's right to counsel under Article I, section 11, of the Oregon Constitution, or the Sixth Amendment to the United States Constitution, nor were they

obtained in violation of his right against compelled self-incrimination under Article I, section 12, of the Oregon Constitution, or the Fifth Amendment to the United States Constitution. Accordingly, we conclude that defendant's statements relating to the murder were admissible.

The following historical facts were expressly found by the trial court, are supported by evidence in the record before the trial court, and are, therefore, binding for purposes of this appeal. *See State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991) (stating principle). In May 1987, defendant was arrested and charged by information with robbery, attempted kidnapping, and assault. On July 2, 1987, defendant was conditionally released. He was required to be in court on July 7 and 13 for pretrial matters, and on July 14 for trial. He failed to appear at any of these required appearances. The release agreement was revoked; bench warrants were issued for defendant's arrest.

On December 12, 1987, Joseph Holcomb was murdered. By late December, Portland Police detectives had developed information implicating defendant in the homicide and suggesting that he was presently at his mother's home in Greenwood, Mississippi. Contacts with Mississippi law enforcement officials confirmed that defendant was staying at his mother's home. The trial court further found:

> "Defendant and [his brother] had travelled from Portland, Oregon, to Greenwood, Miss., to visit their family over the Christmas holidays. They arrived in Greenwood on Sunday, Dec. 20, 1987. Their intent was to visit during the holiday season and to return to Portland thereafter. Defendant was not domiciled at his mother's house at the time of his arrest [on January 5, 1988]. He was a guest. He has been a resident of Portland, Oregon, for about two years prior to his arrest."

Mississippi law enforcement officers who arrested defendant in his mother's home on January 5, 1988, simply appeared at Mrs. Davis' home, knocked, and entered to make the arrest when the door was opened. The Mississippi officers assumed that the Mississippi fugitive arrest warrant naming defendant was sufficient to allow them to enter the home and to take defendant into custody. The Oregon police officers, who also were present at defendant's mother's home at the time of the arrest by the Mississippi police officers, thought

that the Oregon warrant for failure to appear was sufficient to authorize entry into the home. The Oregon police officers did not participate in the actual entry and arrest. Although they did attend planning meetings, the trial court found that the Oregon officers "did not discuss the tactics or techniques of approaching the house."

The Oregon officers conducted a three-hour interview with defendant on the morning of January 5, after his arrest, in an office of the Mississippi Highway Patrol. The officers did not advise defendant's court-appointed attorney in the robbery case that the police wanted to interrogate defendant about the unrelated murder. After advice and waiver of *Miranda* rights, the officers told defendant that they intended to take him back to Portland on the outstanding bench warrant. They then questioned defendant concerning the Holcomb murder. Defendant admitted that he had shot Holcomb, but claimed that he had fired in self-defense. Essentially the same admission was repeated on tape after defendant was again advised of his *Miranda* rights and again waived them. In the trial court, defendant sought to suppress those two statements, as well as certain statements that he made about cocaine trafficking while en route from Mississippi to Oregon.[2]

## THE EXTRATERRITORIAL EFFECT OF ARTICLE I, SECTION 9

■ The first issue in this case is whether the lawfulness of the arrest in Mississippi is subject to scrutiny under Article I, section 9, of the Oregon Constitution.[3] This court has never squarely addressed whether the protections of Article I, section 9, of the Oregon Constitution apply in an Oregon prosecution that seeks to rely on evidence obtained as a result of the actions of out-of-state law enforcement officials while in

---

[2] The Court of Appeals ruled that, with respect to defendant's statements about cocaine trafficking that were made on the trip back to Oregon, the trial court needs to make additional findings on the circumstances under which the statements were made in order to determine whether they were made in the context of an "interrogation" by the police, and also needs to clarify its conclusion as to whether these statements by defendant were made voluntarily. *See State v. Davis*, 99 Or App 358, 362, 781 P2d 1264 (1989) (so holding). That ruling is not at issue before this court.

[3] The defendant makes no assertion that any rights that he might have under the Mississippi Constitution or Mississippi statutes were violated.

another state, when those actions would violate Article I, section 9, if committed by Oregon law enforcement officials in Oregon.[4] *See State v. Kell*, 303 Or 89, 734 P2d 334 (1987) (Article I, section 12, which prohibits compelled self-incrimination, applies to an interrogation by Oregon police officers that was conducted in California).[5]

As background for our analysis, we note that, in 1960, the Supreme Court of the United States abolished the so-called "silver platter doctrine," which until that time had permitted federal courts to receive into evidence items obtained in a search by state police that would have violated the Fourth Amendment if federal officers had conducted it. *Elkins v. United States*, 364 US 206, 80 S Ct 1437, 4 L Ed 2d 1669 (1960). The basis for the silver platter doctrine — the independence of state police action from Fourth Amendment scrutiny and sanction — disappeared with the emergence of the doctrine that incorporated the protections of the Fourth Amendment into the Due Process Clause of the Fourteenth Amendment. *Elkins v. United States, supra*, 364 US at 213. *See Wolf v. Colorado*, 338 US 25, 69 S Ct 1359, 93 L Ed 1782 (1949) (incorporating doctrine); *see also* 1 La Fave, *Search and Seizure*, § 1.5(c), at 110-11 (2d ed 1987 & 1992 Supp) (discussing rationale). Thus, as a general proposition, evidence obtained by officers in violation of the Fourth Amendment now is not admissible in state or federal court, regardless of where or by whom it was obtained. La Fave, *supra*, §1.5(c), at 111 & nn 67-69.[6]

---

[4] Although we ultimately conclude that the arrest of defendant without a search warrant or consent to enter and search did not violate defendant's rights under Article I, section 9, of the Oregon Constitution, it is necessary to consider first whether that provision of the Oregon Bill of Rights applies at all to the Mississippi arrest. If it does not apply, there is no reason to proceed further with this part of the inquiry. The applicable legal standard must be identified before the legality of the conduct can be measured.

[5] Clearly, under *State v. Kell*, 303 Or 89, 734 P2d 334 (1987), any violations of defendant's Article I, section 12 rights that may have occurred during custodial interrogation by the Portland police officers, either in Mississippi or en route to Oregon, would require suppression in an Oregon trial of evidence obtained through the violation.

[6] The rise and the ultimate demise of the silver platter doctrine, with respect to evidence seized in violation of the Fourth Amendment, concerns only the scope of Fourth Amendment protections. By its terms, that piece of federal legal history cannot decide our question of whether Article I, section 9, of the Oregon Constitution, applies to out-of-state conduct that produces evidence that is to be used in an

Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

The introductory phrase, "[n]o law shall violate," is not limited to provisions of legislation. It defines the limits of permissible governmental conduct generally. *See, e.g., State v. Holmes*, 311 Or 400, 406-12, 813 P2d 28 (1991) (analyzing whether police conduct in stopping a motorist was an unlawful seizure under Article I, section 9). The right guaranteed by Article I, section 9, is the right to be "secure * * * against unreasonable search, or seizure." If that constitutional right to be "secure" against impermissible government conduct is to be effective, it must mean that the government cannot obtain a criminal conviction through the use of evidence obtained in violation of a defendant's rights under that provision. *State v. Davis*, 295 Or 227, 666 P2d 802 (1983); *see also State v. Isom*, 306 Or 587, 595, 761 P2d 524 (1988) ("[T]he state may not prove, over objection, any crime with unconstitutionally obtained evidence.").

The question becomes how to determine whether an out-of-state search by non-Oregon law enforcement officials is unreasonable under Article I, section 9. The answer is direct: The standard of governmental conduct and the scope of the individual rights protected by Article I, section 9, are precisely the same as those that would apply to a search by Oregon police in Oregon.

Individual rights so protected are vindicated through the sanction of suppression of evidence. This court has declared that evidence is suppressed for violations of the Oregon Constitution "to preserve * * * rights to the same extent as if the government's officers had stayed within the law." *State v. Davis, supra*, 295 Or at 234; *see also State v.*

Oregon criminal prosecution. However, as we consider whether or not to adopt a state constitutional replica of the extinct federal silver platter doctrine, we are nonetheless mindful of the historical fact that, during its relatively brief life, the doctrine was widely criticized on legal and policy grounds. *See, e.g., Elkins v. United States*, 364 US 206, 208 n 2, 222-23, 80 S Ct 1437, 4 L Ed 2d 1669 (1960) (listing sources and discussing the doctrine).

*Tanner*, 304 Or 312, 315, 745 P2d 757 (1987) ("'[T]he exclusionary rule of [Article I,] section 9 is predicated on the personal right of a criminal defendant to be free from an 'unreasonable search, or seizure[.]' ''). *See generally* Note, *Development of the Right to Exclude Illegally Seized Evidence in Oregon under Article I, section 9 of the Oregon Constitution*, 25 Willamette Law Rev 697 (1989). In the context of a criminal prosecution, the focus then is on protecting the individual's rights *vis-a-vis* the government, not on deterring or punishing the excessive conduct of any particular governmental actor, local or otherwise. *See State v. Davis*, *supra* (rejecting the deterrence of illegal law enforcement conduct as a rationale for the exclusionary rule under Article I, section 9).

This focus on individual protection under the exclusionary rule, a rule that operates to vindicate a constitutional right in the courts, supports the constitutional rule that we announce here: If the government seeks to rely on evidence in an Oregon criminal prosecution, that evidence must have been obtained in a manner that comports with the protections given to the individual by Article I, section 9, of the Oregon Constitution. It does not matter *where* that evidence was obtained (in-state or out-of-state), or *what* governmental entity (local, state, federal, or out-of-state) obtained it; the constitutionally significant fact is that the Oregon government seeks to use the evidence in an Oregon criminal prosecution. Where that is true, the Oregon constitutional protections apply.

It may fairly be argued that that rule means that otherwise probative evidence will be unavailable to Oregon courts and juries because of the actions of out-of-state law enforcement authorities, actions that such authorities almost certainly will have taken without knowing (and without even having any practical way to find out) what the Oregon constitutional rules may be. But the constitutional rights that we are required to vindicate belong to the individual defendant. They are guaranteed to him or her in trials in this state, and there is only one place and only one way in which such rights can be vindicated, *viz.*, in Oregon courts and by excluding from use in Oregon prosecutions any evidence obtained in a manner contrary to Oregon's constitutional rules.

We turn, next, to consider whether the manner of defendant's arrest violated his rights under Article I, section 9, of the Oregon Constitution.

## THE VALIDITY OF THE ARREST UNDER ARTICLE I, SECTION 9

■ In *State v. Jordan*, 288 Or 391, 605 P2d 646, *cert den* 449 US 846 (1980), this court held that "there is no constitutional requirement that police officers who hold a valid arrest warrant and have probable cause to believe [that] the subject is located on private premises must also obtain a search warrant before they may enter the premises to execute the arrest warrant." *Id.* at 399-400. (Footnote omitted.) The *Jordan* decision was expressly predicated on both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, *id.* at 395 and 402, although its Oregon constitutional analysis discussed cases interpreting the Fourth Amendment, *id.* at 396-402, rather more than has been our recent practice. After extended analysis, this court concluded that "constitutional rights will be protected" where there is an arrest warrant and probable cause to believe that the arrestee is present, with the crucial proviso that "the entry pursuant to an arrest warrant is valid only for the purpose of making the arrest and not for the purpose of conducting a general search." *Id.* at 401-02.

We follow the *Jordan* holding. Once a valid arrest warrant issues for a defendant, that defendant has no constitutionally protected interest in keeping his or her person out of government custody. *Cf. Payton v. New York*, 445 US 573, 602-03, 100 S Ct 1371, 63 L Ed 2d 639 (1980) ("If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law."). A valid arrest warrant means constitutionally that it is not "unreasonable" to seize the person of the defendant on the authority of the warrant.

The entry into defendant's mother's home produced only the defendant himself. The arrest — the seizure of defendant's person — was made pursuant to a valid arrest warrant for defendant and with probable cause to believe that defendant was on the premises. The arrest of defendant did

not, therefore, violate Article I, section 9, of the Oregon Constitution.

## THE VALIDITY OF THE ARREST
## UNDER THE FOURTH AMENDMENT

As noted above, *State v. Jordan, supra,* also concluded that an arrest made under circumstances like those present in this case does not violate the Fourth Amendment. Defendant asserts that two later cases of the Supreme Court of the United States compel a different result. We disagree.

The first case on which defendant relies is *Payton v. New York,* 445 US 573, 100 S Ct 1371, 63 L Ed 2d 639 (1980). *Payton* held unconstitutional a New York law that authorized warrantless entry by police officers into private premises to arrest a person based on probable cause. In *Payton,* the entering officers had neither an arrest warrant nor a search warrant. *Payton* is, by the terms of its holding, inapposite to this case, because the police here were executing a valid arrest warrant.

Going beyond the narrow confines of the issue before it, however, the Court in *Payton* stated:

"If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."

445 US at 602-03. Thus, insofar as *Payton* may pertain to this case, it recognizes that an arrest warrant is valid authority to enter premises where a defendant is living to arrest him. If defendant were deemed to have been living at his mother's home at the time of his arrest in this case, then the arrest did not violate the Fourth Amendment under *Payton.* Defendant is thus left to contend that some greater protection under the Fourth Amendment invalidates defendant's arrest if the arrest occurs not where he is living but, instead, in someone else's home.[7]

---

[7] We need not decide whether defendant was living at his mother's home for purposes of the federal constitutional analysis. Regardless of defendant's domiciliary status, his arrest did not violate the Fourth Amendment.

*Steagald v. United States*, 451 US 204, 101 S Ct 1642, 68 L Ed 2d 38 (1981), the second case relied on by defendant here, does not help him. *Steagald* is quite clear as to the limited question before the Court: "Thus, the narrow issue before us is whether an arrest warrant — as opposed to a search warrant — is adequate to protect the interests of *persons not named in the warrant*, when their homes are searched without their consent and in the absence of exigent circumstances." 451 US at 212. (Emphasis added.) *Steagald* does not apply, by its terms, to a claim by defendant, *the subject of the arrest warrants*, that his *arrest* in his mother's home was unlawful. Moreover, *Steagald's* rationale — that a search warrant is necessary to protect the privacy interests of the homeowner when the homeowner is prosecuted based on the search — clearly suggests that those privacy interests would not similarly invalidate an *arrest of the subject of an arrest warrant* in another person's home. Indeed, if the state may arrest a defendant on an arrest warrant *in his own home* without a search warrant (*Payton*), then it is hard to conceive of a logically consistent federal rule that would invalidate the arrest because it occurred without a search warrant in a place where the defendant has a *lesser* privacy interest, *i.e.*, in someone else's home.

From the foregoing, it follows that we have no reason to depart from the analysis of federal law announced by this court in *State v. Jordan, supra*. The Fourth Amendment does not invalidate an arrest based on a valid arrest warrant and probable cause to believe that the subject of the warrant is present on the premises. The later Supreme Court cases relied on by defendant serve only to reinforce, not to undermine, the correctness of that conclusion. Defendant's contention that his statements to the police must be suppressed because his arrest was unconstitutional proceeds from an incorrect premise. The arrest was constitutional under both the state and federal constitutions.

## THE VALIDITY OF DEFENDANT'S
## WAIVER OF COUNSEL

The remaining issue is the validity of the waiver by defendant of his right to remain silent and to have counsel present at the custodial interrogation, insofar as the waiver

affects the admissibility of defendant's statements concerning the murder.

Defendant makes two separate arguments to this court. The first is that the conversation between the Oregon detectives and defendant in Mississippi was a custodial interrogation *on the robbery charge* and that defendant accordingly was entitled to have counsel present during the interrogation pursuant to Article I, section 11, of the Oregon Constitution (right to counsel) and the Sixth Amendment to the United States Constitution (right to counsel).[8] Included within this contention is the argument that the police exploited the right-to-counsel violation to obtain a *Miranda* waiver and that the waiver therefore is not valid.

Defendant's second argument is that, as a matter of law, the police may not attempt, outside the presence of counsel, to secure a waiver of the Article I, section 12, and Fifth Amendment right to counsel at a custodial interrogation, if they are seeking to question a person who is in custody and represented by counsel on any charge. Unlike defendant's first argument, this contention does not depend on defendant's characterization of the questioning in this case as an interrogation on the robbery charge.

A. *Did the police violate defendant's right to counsel on the robbery charge and exploit that violation to obtain a Miranda waiver?*

■       Defendant's conversation with the Oregon officers in Mississippi initially concerned defendant's return to Oregon on the pending charges. At that time, defendant had appointed counsel on the robbery charge, which had proceeded to indictment and arraignment.

The Article I, section 11, and Sixth Amendment rights to counsel "in all criminal prosecutions" are *offense-specific, i.e.*, counsel is deemed to represent a person on a particular

---

[8] Article I, section 11, of the Oregon Constitution, pertinently provides:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

The Sixth Amendment to the United States Constitution pertinently provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence [*sic*]."

charge or criminal episode. *State v. Sparklin*, 296 Or 85, 93, 95, 672 P2d 1182 (1983) (so holding under both state and federal provisions); *McNeil v. Wisconsin*, ___ US ___, 111 S Ct 2204, 2207-08, 115 L Ed 2d 158 (1991) (federal). This court in *Sparklin* stated the rule for Article I, section 11, in terms that remain applicable for both that provision and the Sixth Amendment:

> "Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend. No waiver of that right may occur until defendant has consulted with his attorney."

296 Or at 93.

Once a defendant against whom a formal criminal accusation has been made is represented by counsel pursuant to the Sixth Amendment right to counsel, "government efforts to elicit information from the accused, including interrogation, represent 'critical stages' [of the prosecution] at which the Sixth Amendment applies." *Michigan v. Jackson*, 475 US 625, 630, 106 S Ct 1404, 89 L Ed 2d 631 (1986). *See also State v. Sparklin, supra,* 296 Or at 93 (Article I, § 11). Defendant relies on this assertedly "broad definition of 'interrogation' " (*i.e.*, a government effort to elicit information from the accused) to assert that the discussion on extradition was an interrogation on the robbery charge — a charge on which defendant's Article I, section 11, and Sixth Amendment rights to counsel had attached — requiring the presence of counsel under the state and federal constitutions.

Defendant further contends that the police then exploited that unconstitutional interrogation by interrogating him on the murder without the presence of his counsel appointed to defend him on the robbery charge. Defendant does not assert that he had a right to counsel under Article I, section 11, or the Sixth Amendment in the *pre-indictment* custodial interrogation investigating *the murder*.

Defendant asserts that the following facts support his assertion that the police "interrogated" him about the robbery charge:

> "After *Miranda* rights were given, Detective Nelson told Mr. Davis they intended to take him back to Portland on the

outstanding warrant. He was told that they would later ask him to return with them to Portland to face the robbery charges. However, they first wanted to talk to him about a homicide. The Portland detectives admitted they used the discussion regarding the status of the pending robbery charges as a lead into the interrogation regarding the homicide."

The trial court found that "[n]o threats or promises were made to defendant. No coercion, either physical or psychological occurred." The court further found that defendant understood his *Miranda* rights, which were read completely and thoroughly, that he voluntarily signed the waiver form, and that he knowingly and intelligently waived his rights to counsel and to silence. The trial court also concluded that "[d]efendant was never interrogated by the police about the Robbery charges." The Court of Appeals similarly concluded that "defendant was never interrogated in Mississippi by police about the robbery charges." *State v. Davis, supra*, 99 Or App at 361. Defendant does not dispute the underlying findings of historical fact as to what occurred, but asserts that the initial extradition discussion was nonetheless "interrogation" on the robbery charge under the definition of *Michigan v. Jackson, supra.*

At best, the facts relied on by defendant establish that the police made statements about extradition and that they used those statements to lead into the questioning about the murder. As a matter of law, those facts simply do not establish that there was a "government effort to elicit information from the accused" with respect to the robbery.

Defendant does not assert, and the record does not establish, that the statements were phrased as questions or that they were intended by the police or understood by defendant as an attempt to elicit any information from defendant about the robbery. The statements by police unambiguously announced the officers' intent to return defendant to Portland to face the outstanding charges, a natural statement under the circumstances, possessing none of the earmarks of a question or a surreptitious attempt to get information from defendant about the robbery.

■     The undisputed facts support the trial court's conclusion that defendant was not interrogated by the police on

the robbery charge. Defendant's right to counsel on the robbery charge was not violated by the officers' statements about extradition. Consequently, there was no exploitation of a right-to-counsel violation to obtain a *Miranda* waiver. The waiver was, as the trial court concluded, a voluntary waiver by a person facing custodial interrogation.[9]

B. *Does the law permit the police to seek and secure a Miranda waiver outside the presence of counsel when the person to be questioned is in custody and represented by counsel?*

■ Defendant contends that, "under [*Arizona v. Roberson*, 486 US 675, 108 S Ct 2093, 100 L Ed 2d 704 (1988)], the police may not attempt to secure a waiver of the Fifth Amendment [and Article I, section 12] right to counsel of a represented, in-custody defendant outside the presence of counsel." In the face of this legal contention, *State v. Sparklin, supra*, resolves the state and federal constitutional issues squarely against defendant. Defendant, therefore, invites us to reexamine the validity of *Sparklin* under the Oregon Constitution and to consider whether more recent cases of the Supreme Court of the United States dictate a reversal of *Sparklin* on the federal constitutional question. We reaffirm the validity of *Sparklin* under the Oregon Constitution and conclude that its result remains the correct one under the federal constitution.

1. *Oregon constitutional analysis.*

In *State v. Sparklin, supra*, the defendant was arrested and arraigned on a forgery charge. He requested and was provided an attorney at arraignment. That evening, without notice to the defendant's attorney or an opportunity for the defendant to consult with an attorney, the police secured a *Miranda* waiver and questioned the defendant about an assault related to the forgery charge and also about a factually unrelated murder and robbery. The defendant confessed to the murder and robbery. *Id.* at 87.

_____

[9] As defendant acknowledges, the police need not first identify the subject matter of their questioning for a *Miranda* waiver to be valid; the *Miranda* rights inform a person that *any* statement may be used against them. *See Colorado v. Spring*, 479 US 564, 577 107 S Ct 851, 93 L Ed 2d 954 (1987) (so holding).

On the defendant's appeal from his conviction for murder and robbery, this court first considered the defendant's suppression claim under Article I, section 12, of the Oregon Constitution.[10] The court held that a request for counsel at arraignment, asserting one's right to counsel under *Article I, section 11*, is not tantamount to a request pursuant to defendant's *Article I, section 12*, right to an attorney's presence at subsequent interrogations:

> "We do not regard this defendant's request for an attorney at arraignment as an assertion of his right to be free from compelled self incrimination. The need for an attorney's presence at interrogation arises when the state may elicit from defendant admissions or confessions. At arraignment defendant is not confronted with an atmosphere of coercion, nor does anyone seek to gain admissions from him. The request for an attorney here is a matter of routine, and without some more explicit request by defendant we do not view it as a request for an attorney's presence at subsequent interrogations."

*Id.* at 89-90.

This court expressly considered and rejected the so-called "New York rule," which would provide that "[t]he only way a suspect can waive the right to an attorney at interrogation is in the presence of counsel." *Id.* at 90. The court held that the "defendant's article I, section 12 rights were not violated when the police sought his waiver and interrogated him." *Id.* at 90-91.

The *Sparklin* court then considered the scope of the defendant's Article I, section 11, right to counsel on the forgery charge. The court held:

> "Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend. * * *
>
> "* * * * *
>
> "It is the fairness of the 'criminal prosecution' which counsel's presence helps to ensure. For this reason the article I,

---

[10] Article I, section 12, of the Oregon Constitution provides: "No person shall be * * * compelled in any criminal prosecution to testify against himself."

section 11 right to an attorney is specific to the criminal episode in which the accused is charged. The prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes."

*Id.* at 93, 95. (Footnote omitted.) Accordingly, in considering the defendant's appeal from his convictions on the murder and robbery, the court refused to suppress statements about those crimes made to police while the defendant was represented by counsel on the unrelated forgery charge.[11]

The *Sparklin* decision is of relatively recent vintage. It is clear and well-reasoned, and we adhere to it with respect to its state constitutional holdings.

The present case is controlled by the rule announced in *State v. Sparklin, supra.* Defendant does not contend, and the record does not establish, that defendant's right to counsel was invoked pursuant to an Article I, section 12, request for counsel during custodial interrogation on the robbery charge, as distinct from a routine Article I, section 11, request for appointment of counsel at arraignment on the charge. The trial court found as fact, and defendant asserts in his petition for review, that counsel was first appointed to represent defendant at arraignment. Defendant, who was in custody on a charge for which he had an Article I, section 11, right to counsel, was questioned on a factually unrelated crime after voluntarily waiving his Article I, section 12, right to counsel at a custodial interrogation. In accord with the rule that this court announced in *State v. Sparklin, supra,* we conclude that defendant's waivers were not obtained in violation of his rights under Article I, sections 11 or 12, of the Oregon Constitution, and his statements relating to the murder are not rendered inadmissible by those provisions.

---

[11] Justice Linde, joined by Justice Lent, concurred in the court's opinion, agreeing with the analysis as to both constitutional rights. *State v. Sparklin*, 296 Or 85, 98, 672 P2d 1182 (1983). The concurrence went on to caution that the no-right-to-counsel rule regarding factually unrelated crimes must be scrutinized carefully in each case, positing that the correct test should be "whether the officers are on notice that the suspect's attorney reasonably would regard protection of the suspect's rights in the [uncharged] matter under investigation to fall within his professional responsibility." *Id.* at 99. The concerns expressed by the concurrence are not relevant to the present case.

### 2. *Federal constitutional analysis.*

■ *State v. Sparklin, supra,* reached the same conclusions under the Fifth and Sixth Amendments as it did under the Oregon Constitution. *Id.* at 91-92, 95-98. Defendant contends that *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981) (a case discussed in *Sparklin*); *Michigan v. Jackson, supra;* and *Arizona v. Roberson, supra,* compel a different result. Defendant asserts that those Supreme Court cases mandate an absolute rule that, once a person is in custody and represented on a criminal charge, the state may not, outside the presence of counsel, seek and obtain a valid *Miranda* waiver for investigatory questioning on an unrelated, uncharged criminal matter.

Defendant's legal contention may be summarized as follows. *Edwards v. Arizona* and *Arizona v. Roberson* together require that, once a defendant in custody requests counsel during interrogation and thereby asserts that *Fifth Amendment* right, then the police may not initiate further questioning of defendant *on any crime,* whether or not it is the crime for which defendant is in custody. Additionally, *Michigan v. Jackson* requires that, once a defendant is represented by counsel pursuant to a *Sixth Amendment* right to counsel in a criminal prosecution, then the police may not initiate questioning *on that crime* or validly seek a *Miranda* waiver *on that crime* without first advising defendant's counsel and giving counsel an opportunity to be present. This much is not disputed. Defendant goes on, however, to argue that the two rules, when read together, add up to an additional rule, *viz.,* once a defendant in custody has been provided counsel *on one crime* pursuant to the *Sixth Amendment,* the police may not seek, without counsel present, a *Fifth Amendment* waiver of the right to counsel at an interrogation *on a factually unrelated and uncharged crime.*

Since this court took this case under advisement, the Supreme Court decided a case that settles the federal issues contrary to defendant's position: *McNeil v. Wisconsin, supra.* In *McNeil,* the defendant was arrested pursuant to a warrant charging him with armed robbery. He was advised of his *Miranda* rights and refused to answer any questions. He was brought before a magistrate at a bail hearing, where a public defender represented him. Later that evening, police visited

the defendant in jail. They sought to question him about an unrelated murder, attempted murder, and burglary (the "Caledonia crimes") in which he was a suspect. Police gave the defendant his *Miranda* rights, and he signed a waiver form. The defendant did not deny knowledge of the Caledonia crimes, but said that he had not been involved. Two days later the police returned and obtained another *Miranda* waiver; this time the defendant admitted his involvement in the Caledonia crimes. The defendant then was charged with the Caledonia crimes and convicted of murder. *Id.* at ____, 111 S Ct at 2206-07.

The Supreme Court in *McNeil* held, as did this court in *State v. Sparklin, supra,* that the Sixth Amendment right to counsel is offense-specific and that, "just as the right is offense-specific, so also its *Michigan v. Jackson* effect of invalidating subsequent waivers in police-initiated interviews is offense-specific." *McNeil v. Wisconsin, supra,* ____ US at ____, 111 S Ct at 2207. The Court applied that holding to the facts and concluded: "Because [the defendant] provided the statements at issue here before his Sixth Amendment right to counsel with respect to the *Caledonia offenses* had been (or even could have been) invoked, that right poses no bar to the admission of the statements in this case." *Id.* at ____, 111 S Ct at 2208. (Emphasis in original.)

The *McNeil* holding applies with equal force in this case, where defendant provided the statements at issue before any Sixth Amendment right to counsel in the murder prosecution had attached. Accordingly, the Sixth Amendment right to counsel, and the protections of *Michigan v. Jackson* for subsequent interrogations on the same offense for which there is a Sixth Amendment right to counsel, pose no bar to the admission of defendant's statements in this case.

Having disposed of the defendant's Sixth Amendment claim, the Supreme Court in *McNeil* then proceeded to consider whether the defendant's waiver of his Fifth Amendment rights on the unrelated Caledonia crimes was valid. The Court rejected the defendant's position that the Sixth Amendment right to counsel on one crime prophylactically extended to bar interrogation on an unrelated crime as to which no Sixth Amendment right had attached and for which

interrogation the defendant had executed a voluntary *Miranda* waiver of his Fifth Amendment rights. The Court stated the *Edwards/Roberson* Fifth Amendment interrogation rule as follows:

> "The *Edwards* rule, moreover, is *not* offense-specific: once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present. *Arizona v. Roberson, [supra]*."

*McNeil v. Wisconsin, supra,* ___ US at ___, 111 S Ct at 2208. (Emphasis in original.)[12]

The Court in *McNeil* analyzed the different nature of the Sixth Amendment right to counsel and the Fifth Amendment prophylactic right to counsel (protecting the right against self-incrimination at interrogation) in much the same terms that this court analyzed the distinction for both state and federal purposes in *State v. Sparklin, supra. McNeil v. Wisconsin, supra,* ___ US at ___, 111 S Ct at 2207-08. The Court concluded that the assertion of the Sixth Amendment right to counsel on one charge does not, in fact, imply an assertion of the Fifth Amendment right under *Miranda. Id.* at ___, 111 S Ct at 2209-10. The Court then declined the defendant's invitation to make that implication as a policy matter. *Id.* at ___, 111 S Ct at 2210. The Court expressly rejected the amalgam of Fifth and Sixth Amendment jurisprudence urged by the defendant (the same pre-*McNeil* amalgam of *Edwards, Jackson,* and *Roberson* urged by defendant in this case). *Id.* at ___, 111 S Ct at 2208-11. That is, the Court refused to invalidate a voluntary Fifth Amendment waiver for interrogation as to one crime, based on a prior Sixth Amendment invocation of the right to counsel on another charge. *Id.*

Defendant in this case does not contend, and the record does not establish, that defendant's right to counsel on the robbery charge was invoked pursuant to a Fifth Amendment request for counsel during custodial interrogation on

---

[12] The *Edwards/Roberson* rule is premised on protecting a defendant in custody from badgering by police; a break in custody or a defendant's consultation with counsel can validate a waiver obtained after an earlier assertion of the *Miranda* right to counsel. *McNeil v. Wisconsin,* ___ US ___, 111 S Ct 2204, 2208, 115 L Ed 2d 158 (1991).

that charge, as distinct from a routine Sixth Amendment request for appointment of counsel at arraignment on the robbery charge. Consequently, the facts and legal arguments in this case cannot be distinguished from the position of the defendant that was rejected by the Supreme Court in *McNeil v. Wisconsin, supra.*

We conclude that this court's analysis of federal constitutional law in *State v. Sparklin, supra,* was correct and is now confirmed by the holding of the Supreme Court in *McNeil v. Wisconsin, supra.* Defendant's *Miranda* waivers were voluntary and were not rendered involuntary either by application or by extension of the *Edwards/Roberson* and *Jackson* rules.

The decision of the Court of Appeals is affirmed in part on different grounds. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.