WALTERS, J.,
dissenting.
The majority is bold, and it is deft. The majority begins by affirming the rule of stare decisis, declaring that “the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent” and deciding that the state did not meet its burden of persuasion in this case. 353 Or at 137. Then, by sleight of hand, the majority reverses its holdings in State v. Hall, 339 Or 7, 115 P3d 908 (2005), and State v. Rodgers/Kirkeby, 347 Or 610, 227 P3d 695 (2010), a case that this court decided just three years ago.
In Hall, police officers unlawfully and unconstitutionally stopped the defendant without reasonable suspicion of criminal activity. During the illegal stop, the officers asked for and the defendant gave his consent to search. The officers were polite and did not threaten or cajole the defendant. There was no evidence that the officers had acted egregiously. The court nevertheless held that the evidence that the officers obtained as a result of the consent search was not admissible, because the state had not proved “that defendant’s decision to consent, even if voluntary, was not the product of the preceding violation of defendant’s rights under Article I, section 9.” 339 Or at 29 (emphasis added).
In this case, the police also unlawfully and unconstitutionally stopped defendant without reasonable suspicion of criminal activity and asked him for his consent to search. The majority holds that the evidence that the police obtained when defendant first consented to the search was admissible, because it was not the product of the preceding violation. 353 Or at 154. Yet the majority does not overrule its holding in Hall, nor does it distinguish it.
In 2010, this court reaffirmed its holding in Hall in State v. Rodgers/Kirkeby, 347 Or 610. In Rodgers /Kirkeby, the court held that the defendants’ consents to search were *161 the products of unlawful detention and must be suppressed. The court explained:
“It was during the period of unlawful detention that the officers requested that each defendant consent to a search. Here, as in Hall, neither defendant spontaneously granted the officers consent to search; instead, each defendant gave his consent in response to the officers’ requests. The state does not advance any argument to this court to satisfy its burden under Hall that intervening circumstances or factors severed the connection between the unlawful seizures and defendants’ consent. Thus, as in Hall, given the temporal proximity between the illegal detention and each defendant’s consent, and in the absence of any other intervening circumstances, or other circumstances mitigating the effect of the unlawful seizures of each defendant, we conclude that each defendant’s consent, even if voluntary, was the product of police conduct that violated Article I, section 9. Because the consent to search in each case was a product of the unlawful seizure, the evidence obtained during the search, in both cases, must be suppressed.”
Id. at 630. The officers in Rodgers /Kirkeby did not threaten or cajole the defendants. There was no evidence that the officers acted in an egregious manner. If the holding in Rodgers /Kirkeby is no longer good law, why does the majority not overrule it? If Rodgers/Kirkeby is still good law, why does the majority not distinguish it?
The majority also fails to contend with other cases that should carry precedential weight. In Hall, the court carefully considered those cases and said:
“In our view, the circumstances at issue here more closely resemble the circumstances at issue in Dominguez-Martinez and Toevs, rather than the circumstances at issue in Kennedy and Rodriguez. Similarly to the defendants in Dominguez-Martinez and Toevs, defendant here consented to the search during an unlawful stop. Unlike the defendants in Rodriguez and Kennedy, defendant’s grant of consent was not spontaneous but, instead, was made only in response to [the officer’s] request that defendant allow a search. [The officer] made that request immediately after he had questioned defendant about whether defendant was carrying any weapons or illegal drugs and while he was waiting for the results of defendant’s warrant check. Given *162 the close temporal proximity between the illegal detention and defendant’s consent, and the absence of any intervening circumstances or other circumstances mitigating the effect of that unlawful police conduct, we cannot say that the state has proved that defendant’s decision to consent, even if voluntary, was not the product of the preceding violation of defendant’s rights under Article I, section 9. We therefore conclude that the unlawful seizure of defendant vitiated his consent to the search and, for that reason, the evidence from that search is inadmissible under Article I, section 9.”
339 Or at 36. In this case, the majority relies heavily on Rodriguez, a case that the court considered and distinguished in Hall, but says nothing about Dominguez-Martinez and Toevs, the cases that the court cited in support of its decision in Hall. Are those cases no longer good law, or are they distinguishable? The majority does not say.
The majority justifies its failure to grapple with the need for stability and predictability that the rule of stare decisis fosters by claiming that it has merely “clarified” Hall while continuing to adhere to the precept that a court must suppress evidence obtained from a consent search if the consent was obtained “through exploitation of the unlawful police conduct.” 353 Or at 137.[1] Hall and Rodgers /Kirkeby undoubtedly stand for that precept, but they do not stand for that precept alone. They also stand for the rule that evidence is obtained through exploitation when the police unlawfully stop citizens and, while continuing to detain them without legal authority to do so, request that they submit to search. Under Hall and Rodgers /Kirkeby, the law has been that, in the absence of intervening or mitigating circumstances, the evidence that the police obtain must be suppressed even when the citizens’ consents to search are voluntary. This court may distinguish or even reverse those holdings, but it should do so openly and in accordance with the rule of stare decisis. Because the majority does otherwise, I ask the question that all citizens have the right to ask: What force does *163 the rule of law have if a court can avoid it by refusing to call it by its right name?
I press my point because, in effectively overruling Hall and Rodgers /Kirkeby, the majority changes the exclusionary rule as Oregon has known it and, in my view, does so to the detriment of Oregonians. The majority defends its decision by saying that Hall’s exploitation test “failed to give sufficient weight to a defendant’s voluntary consent to a search * * 353 Or at 149. But as the majority so aptly explains, whether a defendant’s consent was voluntary is a question that is distinct from the question of whether the evidence that the police obtained was a product of their illegal conduct. Id. at 12.
The aim of the Oregon exclusionary rule is to restore a defendant to the same position as if “the government’s officers had stayed within the law.” State v. Davis, 295 Or 227, 234, 666 P2d 802 (1983). Before today, this court had “rejected the view that the Oregon exclusionary rule is predicated upon a deterrence rationale” and instead had adopted a rule “that serves to vindicate a defendant’s personal rights. In other words, the right to be free from unreasonable searches and seizures under Article I, section 9, also encompasses the right to be free from the use of evidence obtained in violation of that state constitutional provision.” Hall, 339 Or at 24 (citing State v. Davis, 313 Or 246, 249, 834 P2d 1008 (1992)).
The majority’s new test focuses not on whether the police violated a defendant’s constitutional right against unreasonable seizure and obtained evidence as a result, but on whether the police also engaged in purposeful or additional misconduct that may have affected the defendant’s decision to consent. The majority justifies consideration of those factors by explaining that
“police misconduct that is intended to gain a defendant’s consent may well be more likely to substantially affect that defendant’s decision to consent. Likewise, particularly egregious police misconduct — such as excessive use of force in unlawfully seizing a defendant — is more likely to affect the defendant’s decision to consent than more restrained police behavior.”
*164 353 Or at 147.1 do not quarrel with that reasoning; I question its role in the exploitation analysis.
When the police unconstitutionally stop or detain a defendant and act with an illegal purpose or engage in egregious misconduct, a court must consider whether the defendant’s subsequent consent to search is voluntary. Police actions that deprive a defendant of constitutional rights or exert unconstitutional coercion may render a defendant’s consent involuntary. See State v. Kennedy, 290 Or 493, 624 P2d 99 (1981). But, as the majority acknowledges, even when a defendant’s consent is voluntary, evidence that is the product of illegal police misconduct is subject to suppression. 353 Or at 140. In this case, the majority’s decision that the evidence that the police obtained was admissible because the police actions, although illegal, were not egregious and may not have affected defendant’s decision to consent may reflect an accurate assessment that defendant’s consent was voluntary in the sense that it was an act of free will. However, the majority fails to grapple sufficiently with whether defendant’s consent was, nevertheless, a product of the officer’s unlawful stop and detention. Hall and Rodgers/ Kirkeby recognize the reality of the power imbalance that exists when the police use their authority to unlawfully stop and detain a person and then, while continuing to exert that authority, seek consent to search. The majority conflates the voluntariness and exploitation prongs of the analysis and wrongly fails to give sufficient effect to the constitutional mandate of the exclusionary rule in Oregon — that courts apply it to vindicate a defendant’s personal right against unconstitutional seizure. Hall, 339 Or at 24; Davis, 313 Or at 249.
The majority’s new test also upends the Oregon exclusionary rule in other ways. Before today, the inquiry that the court used to decide whether police had exploited an illegality and obtained evidence that must be suppressed was an objective, logical one that did not require analysis of the subjective motivation of the police in seeking a defendant’s consent to search or of the subjective effect that the police misconduct had on a defendant’s decision to give consent. By adopting an exploitation test that now permits or even requires both, the majority shifts away from the *165 objectivity and logic of the exploitation prong of the analysis and imposes a test that is both more intrusive and less clear. It may seem right to instruct courts and officers to consider “the totality of the circumstances,” but police officers and trial courts endeavor to make decisions that this court will uphold and are entitled to more guidance than the majority gives. If the facts unfold as they did in Hall and Rodgers/ Kirkeby, must the trial court suppress the evidence as this court required in those cases, or, considering the fact that the police were polite, must the trial court now admit the evidence?
Until today, certain consequences followed when the police illegally and unconstitutionally stopped citizens without probable cause or reasonable suspicion and, while continuing to unlawfully detain them, asked for and obtained their consent to search. Today, the majority has eliminated, or at least substantially altered, the certainty that the violation of a defendant’s constitutional rights will be vindicated. If the majority had acknowledged and attempted to justify its abandonment of precedent, I might be more satisfied as a judge, but I do not know that I would be more comfortable as a citizen.
The majority is bold, and it is deft. In my view, the majority is also wrong. I respectfully dissent.
De Muniz, Senior Judge, Justice pro tempore, joins in this dissent.

 In 2011, this court reiterated that “[f]ew legal principles are so central to our tradition as the concept that courts should ‘[t]reat like cases alike,’ * * * and stare decisis is one means of advancing that goal.” Farmers Ins. Co. v. Mowry, 350 Or 686, 698, 261 P3d 1 (2011) (second alteration in original; citation omitted).