Argued and submitted August 8, orders of suppression reversed in part and remanded December 11, 2002

STATE OF OREGON,
*Appellant,*

*v.*

PAUL ARTHUR MAKUCH,
*Respondent.*

CR98-1962; A110292 (Control)

STATE OF OREGON,
*Appellant,*

*v.*

LEIGH ANN RIESTERER,
*Respondent.*

CR98-1961; A110839
(Cases Consolidated)

59 P3d 536

Daniel J. Casey, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Robin A. Jones, Deputy Public Defender, argued the cause for respondent Paul Arthur Makuch. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Harrison Latto argued the cause and filed the brief for respondent Leigh Ann Riesterer.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals pretrial orders suppressing evidence of a marijuana grow operation in the basement of a business operated by defendants Paul Arthur Makuch and Leigh Ann Riesterer. ORS 138.060(1)(c). The trial court concluded that ORS 9.695(1) and (4) required suppression. As explained below, we hold that neither that statute nor Article I, section 9, of the Oregon Constitution compels suppression. Accordingly, we reverse and remand.

■    The facts[1] are complex and involve three separate searches that occurred on the same day, July 7, 1998: (1) the search of the residence of Jeffrey Husk in Portland; (2) the subsequent search of the residence of defendants' attorney, Lawrence Neal, in Vancouver, Washington, including the search of Neal's organizer/day planner, which disclosed defendants' names and addresses; and, finally, (3) the search of defendants' place of business in Milwaukie, Oregon, which revealed a marijuana grow operation. We describe the searches in sequence.

On July 7, 1998, Officer Brian Schmautz of the Portland Police Bureau sought and obtained a warrant to search Husk's home in Portland. The affidavit in support of the warrant revealed that Schmautz had received information from an informant who had seen marijuana growing at Husk's residence. The informant told Schmautz that Husk had said that he had a partner and was involved in marijuana distribution. The informant also told Schmautz that Husk had told him that his partner would be coming to Husk's residence. Thereafter, the informant saw only one person visit the residence and wrote down the Washington state license plate number of that visitor. After the visitor left, Husk told the informant that the visitor was his partner, Larry, an attorney in Vancouver, and stated that he had

---

[1] The trial court's findings of historical fact are binding on us if there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review to determine whether the trial court applied legal principles correctly to the facts. *Id.*

traded marijuana cuttings with his partner. Schmautz determined that the license plate was for a vehicle registered to Lawrence Neal of Vancouver, Washington.

Schmautz went to Husk's home and talked with Husk, who eventually led Schmautz to his garage, where Schmautz observed marijuana leaves and potting soil from marijuana plants. Schmautz asked Husk for consent to search his home, and Husk responded that he could not allow a search unless he contacted his friend and attorney, Larry Neal. Schmautz then obtained a warrant to search Husk's residence, and the ensuing search yielded numerous marijuana plants, as well as a recent telephone bill that showed a call to "L. Neal."

Meanwhile, Schmautz had contacted Detective Charles Drake of the Clark County, Washington, Sheriff's Office concerning Lawrence Neal. Drake applied for a warrant to search Neal's home in Vancouver for marijuana plants and related evidence. In his affidavit, Drake recounted information that he had obtained from Schmautz concerning the informant's conversations with Husk and the informant's observation of the Washington license plate. Drake's affidavit also stated that marijuana had been found in a search of Husk's residence. Finally, Drake's affidavit indicated that he had sought and received records showing that the amount of electricity used in Neal's home was significantly greater than the amount used by the previous occupant.

While waiting for the Washington magistrate to issue the warrant, Drake received word that Husk, who was in custody, was going to be given the opportunity to make an outside call. Because he was concerned that Husk would call Neal and warn him, Drake ordered police officers to "secure" Neal's residence pending issuance of a warrant. Those officers entered Neal's house and discovered a marijuana grow operation before the magistrate issued the warrant. The issuing magistrate was not informed, before he issued the warrant, that officers had already invaded the premises and, in doing so, had already discovered a marijuana grow operation without the benefit of a warrant.

Thereafter, Schmautz arrived at Neal's residence and assisted the Washington officers with the execution of

the warrant. Neal admitted to the police that he grew and sold marijuana. When Drake told Neal that his home was being searched because Portland police had just served a warrant on one of his "Oregon associates," Neal hung his head and then blurted out, "Paul and Leigh Ann." Neal said that he had known "Paul and Leigh Ann" since their arrest in Multnomah County for growing marijuana several years earlier.

As the search progressed, Schmautz discovered Neal's "personal organizer" in an upstairs bedroom. That "organizer" was a zippered, book-sized looseleaf binder, which was clearly marked on the first page: "ATTORNEY/ CLIENT CONFIDENTIALITY PRIVILEGE CLAIMED ON ALL CONTENTS." The personal organizer contained an address section that listed several "Pauls" and "Leigh Anns" or "Leanns," but only one "Paul" and one "Leigh Ann"—these defendants—who shared the same addresses. One of those addresses was a T-shirt business in Milwaukie, Oregon. Shortly thereafter, Neal admitted to Drake that "Paul and Leigh Ann" had a grow operation in Clackamas County in the previous year and that he had sold them marijuana recently.

Schmautz and another officer went to defendants' T-shirt shop in Milwaukie at about 3:30 on the afternoon of July 7. They approached the open front door of the shop. Once inside, they passed a sign that said, "Printing in Progress, Please Do Not Disturb," and another sign that said, "Authorized Personnel Only," which may have been obscured by garments. They approached defendants, asking if they knew Husk or Neal. Defendants denied knowing either. The officers then told defendants that they had information of a marijuana grow and asked to look around. Defendants consented. In the back room of the shop, Schmautz smelled what he recognized as the odor of growing marijuana. When asked about the basement, defendants denied that they had access to it.

Schmautz then spoke with the owner of the business next door, who said that defendants did have access to the basement. Schmautz also called defendants' landlord, who verified that defendants were the tenants of the basement as well. Schmautz then returned to the T-shirt shop and asked

to do a more thorough search. At that point, defendant Riesterer became agitated and insisted that the police leave. Schmautz told defendants that he would take them into custody if they ordered him out of the shop and further stated that he would attempt to get a search warrant. Defendant Makuch then showed the officers around again and, after smelling marijuana in a darkroom, Schmautz lifted up a carpet and saw a quarter- to half-inch long piece of marijuana leaf near a trap door to the basement. Electrical cords also appeared to lead to the basement. When defendants continued to deny that they had access to the basement, Schmautz left to obtain a search warrant, leaving several other officers in the shop. The ensuing search of the basement under the T-shirt shop revealed more than 40 growing marijuana plants.

Defendants were charged in Clackamas County with manufacture, delivery, and possession of a controlled substance. ORS 475.992. Neal was charged in Clark County, Washington, with crimes relating to the marijuana grow operation found in his residence.[2]

Neal moved in Clark County Superior Court to suppress the fruits of the search of his home. The superior court concluded that the Washington officers' actions in securing Neal's residence before the warrant was issued was an unlawful search, but that the evidence inevitably would have been discovered once the warrant had been executed. However, the court further concluded, under the Washington Constitution, that probable cause was lacking: "The affidavit contains no factual information establishing a nexus of criminal activity to any particular residence except Jeffrey Husk's. There is no factual basis isolating criminal activity to Larry Neal's home." In so holding, the court noted that Drake had failed to follow the correct statutory procedure for procuring power consumption records—but concluded that, even if the power consumption records were considered, probable cause did not exist to search Neal's residence.

After the Washington trial court ruled, defendants in this case moved to suppress evidence of the marijuana and

---

[2] The record does not disclose what charges, if any, were filed against Husk.

other evidence seized from their T-shirt shop and to controvert the affidavit in support of the warrant. Defendants argued, as pertinent here, that the evidence was obtained through exploitation of the previous unlawful search of Neal's residence in Vancouver. In so moving, defendants relied not only on Article I, section 9, of the Oregon Constitution but also on ORS 9.695. That statute provides:

"(1)   Notwithstanding ORS 133.535, the files, papers, effects or work premises of a lawyer relating to the provision of legal service by the lawyer shall not be subject to search or seizure by any law enforcement officer, either by search warrant or otherwise.

"(2)   The provisions of subsection (1) of this section do not apply where there is probable cause to believe that the lawyer has committed, is committing or is about to commit a crime.

"(3)   As used in this section, 'lawyer' means a member of the Oregon State Bar or a person licensed to practice law in any court of this state or any court of record of the United States or of any state, territory or other jurisdiction of the United States.

"(4)   Evidence or the fruits thereof obtained in violation of this section shall be inadmissible in any criminal or civil action or proceeding, except for an action or suit brought for violation of this section or the rights protected thereby."

The state responded by conceding that "police acted unlawfully in their search of Larry Neal's residence in Washington." The state argued, however, that that illegality was irrelevant to any issue in this case because defendants lacked a protected privacy interest in Neal's residence or in his organizer. The state further contended that the Washington court's ruling was not dispositive of the question of the applicability of the exception contained within ORS 9.695(2) concerning probable cause to believe that a lawyer has committed a crime. Finally, the state argued that, given the later-enacted ORS 136.432,[3] ORS 9.695(4) did not authorize suppression of the evidence.

---

[3] ORS 136.432 provides, in part:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1)   The United States Constitution or the Oregon Constitution[.]"

The trial court initially denied defendants' motions in part, on the ground that they had no privacy interest in Neal's personal organizer.[4] However, the court reconsidered that decision in light of *State v. Thompson-Seed*, 162 Or App 483, 986 P2d 732 (1999), in which we held that ORS 136.432 was intended to constrain courts from creating new rules of exclusion, and was not intended to repeal existing statutory rules of exclusion. After we issued *Thompson-Seed*, defendants argued that ORS 9.695(4) contained an express exclusionary rule that was not abrogated by ORS 136.432. The trial court agreed and ordered suppression under ORS 9.695(4).

On appeal, the parties raise a dazzling, and potentially bewildering, array of ingenious interlocking statutory and constitutional arguments and responses. Some of those contentions are properly preserved and presented for our consideration. Many are not. Stripped to its essentials, however, the case reduces to two fundamental issues: Does ORS 9.695(4) compel suppression? If not, is suppression otherwise required on constitutional grounds?

As explained below, we answer both of those questions in the negative. Defendants are not entitled to suppression pursuant to ORS 9.695(4) because, at the time Schmautz opened and inspected Neal's organizer, discovering defendants' names and addresses, police had probable cause to believe that Neal had committed a crime. *See* ORS 9.695(2). Further, defendants were not entitled to suppression under Article I, section 9, of the Oregon Constitution because they had no constitutionally cognizable protected privacy interest either in their attorney's residence or in the information—their names and addresses—found in Neal's organizer. Finally, we reject defendants' cross-assignment of error concerning the lawfulness of the initial police entry into their business premises and the validity of their consent to the search of the premises. Consequently, we reverse and remand.

---

[4] At the same time, the trial court granted defendants' motion to suppress evidence seized from their automobile. That ruling, which is expressed in the orders that the state appeals, is not at issue on appeal.

We begin with the statutory argument. The state contends that ORS 9.695 does not require suppression for a variety of reasons, including (1) ORS 9.695 applies only to protect "confidential" information, and defendants' names and addresses were not "confidential"; and (2) regardless of whether the statute would otherwise encompass the search of Neal's organizer, including defendants' names and addresses, this case falls within the statutory exception to protection because there was probable cause to believe that Neal was engaged in criminal activity. ORS 9.695(2). We do not address and resolve the first contention in this context because the second is dispositive.

■     Before addressing the particular facts establishing probable cause for purposes of ORS 9.695(2), we emphasize that the referent for that statutory "probable cause" inquiry materially differs from the generic criminal probable cause inquiry. Under the criminal law generally, before an item can be lawfully searched and seized, there must be probable cause to believe that the item itself is evidence of a crime or is contraband. Conversely, under the exception described in ORS 9.695(2), the files, papers, and effects of an attorney are not subject to the protections of ORS 9.695(1) and (4) if there is probable cause to believe that the *lawyer* has been, is, or is about to be, engaged in criminal activity. Thus, subsection (2) focuses the probable cause inquiry on the lawyer, and not on the item that is searched and seized. Most simply, a lawyer's papers and effects are not subject to protection under subsection (1) and (4) if there is probable cause to believe that the lawyer has committed a crime *even if there is no probable cause that those papers or effects will yield evidence of that crime or any other crime*.

That is not to say, of course, that there are not other grounds or mechanisms for suppressing a lawyer's papers or effects if such items are searched and seized *solely* on the basis that probable cause exists that the lawyer is criminally involved. For example, if a lawyer's papers and effects are searched without probable cause that those items themselves contain evidence of a crime, the results of that search might be suppressed on the basis of Article I, section 9, or the Fourth Amendment. *See* ORS 133.673. Such evidence might

also be subject to exclusion at trial on the basis of attorney-client privilege. *See* OEC 503. But that evidence cannot be suppressed *pursuant to ORS 9.695(1) and (4)*.

■        With the statute so understood, the question presented here is not whether there was probable cause to search Neal's residence or his personal organizer, but whether, at the time of that search, there was probable cause to believe that Neal had committed, was committing, or was about to commit a crime. ORS 9.695(2). There was.[5]

On appeal, the state makes two related arguments as to the existence of probable cause before Schmautz opened and read Neal's organizer. First, the state asserts that the evidence obtained solely as a result of the Husk search established probable cause that Neal had engaged in, or was engaging in, criminal conduct. That is, probable cause for purposes of ORS 9.695(2) existed even before the initial entry into Neal's home, without reference to the fruits of the Washington search. Second, the totality of the evidence from the search at Neal's home, including conversations with Neal, up to the point that Schmautz searched the organizer, established probable cause that Neal had committed or was committing a crime.

■        We do not address the state's first argument because it was not raised before the trial court. *See, e.g., State ex rel Juv. Dept. v. Pfaff*, 164 Or App 470, 480 n 6, 994 P2d 147 (1999), *rev den*, 331 Or 193 (2000) ("[A]lthough it is axiomatic that we may affirm on grounds not argued to the trial court, there is no authority for the proposition that, without invoking 'plain error,' we can *reverse* the trial court on grounds not argued to it." (emphasis in original)). However, the state's second argument was preserved and is persuasive.

The state asserts, particularly, that, at the time Schmautz searched the organizer, he had probable cause to

---

[5] Although probable cause is not defined within ORS 9.695, that term has a standard legal meaning that is consistent with the definition of that term found in ORS 131.005(11):

" 'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

believe that Neal had committed a crime because, by then, marijuana had been found in Neal's home and Neal had admitted to selling marijuana. Defendants respond that the Washington trial court's determination that the entry into Neal's home was unlawful under Washington law effectively precludes Oregon courts from considering information gained from that search in determining whether there was probable cause for purposes of ORS 9.695(2). We disagree.

■     Defendants first posit that "issue preclusion" bars the "relitigation" of the issue. That argument fails because the issue here was not identical to the issue in the Washington proceedings. *See generally Drews v. EBI Companies,* 310 Or 134, 139-40, 795 P2d 531 (1990) (describing issue preclusion requirements). Here, the question is whether there was probable cause for purposes of ORS 9.695(2) that *Neal* had committed, was committing, or was about to commit a crime. The question before the Washington court was whether probable cause existed to search Neal's *home.* While there is some overlap, those issues are by no means identical.[6]

Underlying defendants' arguments is the broader premise that information obtained in violation of Washington law cannot be considered in determining probable cause for purposes of ORS 9.695(2). That premise is invalid. As defendants correctly point out, the state failed to preserve any argument that the validity of the Washington warrant should have been determined under *Oregon* constitutional law. However, it does not follow that the application of Washington constitutional principles by a Washington court to a particular search has any relevance to an Oregon court's later determination of whether the "attorney crime" exception in ORS 9.695(2) applies to the same set of facts, albeit in the context of a different legal issue concerning different defendants. Defendants cite no authority for their implicit premise, and we are aware of none. Indeed, the law is generally to the contrary. *See generally* 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.5(c),

---

[6] We note, moreover, the obvious: Neither of these defendants nor the State of Oregon was a party to the Washington criminal prosecution that generated the suppression order.

144-55 (3d ed 1996) (discussing interstate variations on the now-defunct "silver platter" doctrine and concluding that evidence obtained in violation of the law of one state is not rendered inadmissible in another state based solely on that violation).[7]

■     The application of ORS 9.695(2) to these facts is straightforward. A lawyer's "papers" are removed from the protection of ORS 9.695(1) if there is "probable cause to believe that the lawyer has committed, is committing or is about to commit a crime." ORS 9.695(2). At the time Schmautz searched Neal's personal organizer—which constitutes "papers" for purposes of ORS 9.695(1)—he was aware that marijuana had been found growing in Neal's residence and that Neal had admitted to growing and selling marijuana, a crime under Washington law. *See* RCW 69.50.401. That the information establishing Neal's criminal involvement had been obtained in violation of Washington law did not alter the fact that, at the time Schmautz read the organizer, he had "probable cause" for purposes of ORS 9.695(2) to believe that Neal had committed a crime.[8] In sum, Neal's personal organizer was not protected by ORS 9.695(1). Consequently, the trial court erred in determining that the evidence gained as a result of the search of Neal's personal organizer must be suppressed under ORS 9.695(1) and (4).

---

[7] *State v. Davis*, 313 Or 246, 834 P2d 1008 (1992), corroborates our conclusion that Washington law is not relevant to our analysis. In *Davis*, the question was whether the trial court properly suppressed evidence gained in the course of a Missouri search. The court stated:

"If the government seeks to rely on evidence in an Oregon criminal prosecution, that evidence must have been obtained in a manner that comports with the protections given to the individual by Article I, section 9, of the Oregon Constitution. It does not matter *where* that evidence was obtained (in-state or out-of-state), or *what* governmental entity (local, state, federal, or out-of-state) obtained it; the constitutionally significant fact is that the Oregon government seeks to use the evidence in an Oregon criminal prosecution."

*Id.* at 254 (emphasis in original). Although *Davis* did not involve any questions of Missouri statutory or constitutional law, it does stand for the broad proposition that suppression of evidence in an Oregon criminal prosecution is to be based on Oregon or federal constitutional law.

[8] The parties agreed that Neal's residence is not protected under ORS 9.695(1). We further note that, even as a matter of Oregon constitutional law, defendants could not have successfully contested the search of Neal's residence, at least up to the time that Schmautz found and searched the organizer, because defendants could not have established a constitutionally cognizable protected privacy interest in their attorney's *residence. See State v. Tanner*, 304 Or 312, 745 P2d 757 (1987).

■ ■ That conclusion does not end our analysis. In response to the state's arguments, both defendants assert an alternative basis for affirmance—that, even if the trial court erred in suppressing the evidence based on ORS 9.695, they nonetheless were entitled to suppression of the evidence because it was the fruit of an *unconstitutional* search of Neal's personal organizer. As noted above, the state conceded in the trial court that the Washington search was properly ruled unconstitutional under Article I, section 7, of the Washington Constitution. Thus, we assume for purposes of this case that the search of Neal's residence and of his personal organizer were unconstitutional under the Washington Constitution. Nevertheless, as explained above, a violation of the Washington Constitution does not provide a basis for suppressing evidence in an Oregon criminal proceeding. However, *Oregon* constitutional protections apply to evidence used in Oregon criminal proceedings that was gathered in other states. *See generally State v. Davis*, 313 Or 246, 834 P2d 1008 (1992) (discussed in note 7, above).

Thus, for defendants to prevail on their alternative basis for affirmance, they must establish that the evidence gained as a result of the search of Neal's personal organizer violated their rights under Article I, section 9, of the Oregon Constitution.[9] The state contends that defendants had no protected privacy interest in the information pertaining to them—defendants' names and home and business addresses—that was noted in Neal's personal organizer. In that connection, the state invokes *Little v. Dept. of Justice*, 130 Or App 668, 674, 883 P2d 272, *rev den*, 320 Or 492 (1994), in which we held that the attorney-client privilege, OEC 503, codified the common-law rule that, "absent peculiar circumstances, the attorney-client privilege did not shield the identities of clients."

■■■■■ We appreciate that the scope of constitutional protection under Article I, section 9, for information in an attorney's possession is not *necessarily* congruent with the scope of the

---

*Accord* 185 Or App at 310-12 (holding that defendants did not have a protected privacy interest in their names and addresses noted in the organizer).

[9] Defendants do not invoke the Fourth Amendment to the United States Constitution in this context.

attorney-client privilege. Nevertheless, the latter is, at least, instructive with respect to the former. *See generally State v. Campbell*, 306 Or 157, 170, 759 P2d 1040 (1988) ("One explanation for the absence of a constitutionally protected interest against certain forms of government scrutiny may be the absence of any freedom from those forms of scrutiny in society at large."). Consequently, we conclude that, given the general principle expressed in *Little*, in the absence of "peculiar circumstances," a person has no constitutionally protected privacy interest in the listing of his or her name in an attorney's identification of clients. We need not explore the contours of the "peculiar circumstances" exception to that principle because defendants do not contend here that their identities were somehow less susceptible to scrutiny than the names of clients generally. In sum, Schmautz's search of Neal's organizer did not invade any constitutionally protected privacy interest with respect to defendants' names.

We further conclude that the same operative principle controls with respect to the disclosure of a client's home or business address, as memorialized in an attorney's papers or effects. That is, in the absence of exceptional circumstances, a home or business address is assumed to be "nonprivate." In general, home and business addresses are easily obtainable and available to the general public. That is not to say that there are not, and cannot be, circumstances in which a client wishes to maintain the confidentiality of his or her address,[10] but—as with client names—those circumstances are properly understood to be the exception, not the rule. Here, there is no showing of any exceptional circumstance in relation to defendants' names or the address of their T-shirt shop. Consequently, Schmautz's discovery of defendants' names and home and business addresses in Neal's organizer did not invade any constitutionally protected privacy interest in that information.

Schmautz's discovery of defendants' names and addresses did not violate defendants' rights under ORS 9.695

---

[10] Consider, for example, the circumstance in which a battered woman leaves her home and consults with an attorney but does not want her husband or partner to know of her whereabouts.

or Article I, section 9, of the Oregon Constitution. Consequently, Neal's subsequent disclosure to Schmautz that defendants' marijuana grow operation was located at their Milwaukie business address was not the unlawfully exploited product of any prior illegality. *See generally State v. Hall*, 183 Or App 48, 50 P3d 1258 (2002) (reiterating adherence to exploitation test described in *State v. Stanley*, 139 Or App 526, 534, 912 P2d 948 (1996), *rev'd on other grounds*, 325 Or 239, 935 P2d 1202 (1997)).[11] Nor, by the same reasoning, was the Oregon officers' ultimate search of defendants' business and discovery of the marijuana grow operation the product of any prior illegality.

Finally, defendants cross-assign error to the trial court's determinations that Schmautz's initial entry into their T-shirt shop was lawful and that their consent to search was valid. We reject that cross-assignment of error without discussion.

Orders of suppression reversed in part and remanded.

---

[11] We note that, without Neal's previously volunteered identification of "Paul and Leigh Ann" as the "Oregon associates," the revelation of the names and addresses in Neal's organizer would not have led to the search at issue in this case. Again, however, defendants had no constitutionally protected privacy interest with respect to events antedating the discovery of the organizer. *See* 185 Or App at 309-10 n 8.