Argued and submitted September 9, 2004, decision of Court of Appeals affirmed; orders of circuit court affirmed in part and reversed in part, and cases remanded to circuit court for further proceedings June 2, 2006

STATE OF OREGON,
*Respondent on Review,*

*v.*

PAUL ARTHUR MAKUCH,
*Petitioner on Review.*

(CR98-1962; CA A110292 (Control); SC S50435)

STATE OF OREGON,
*Respondent on Review,*

*v.*

LEIGH ANN RIESTERER,
aka Leigh Ann Makuch,
*Petitioner on Review.*

(CR98-1961; CA A110839; SC S50478)
(Consolidated for Opinion)

136 P3d 35

Robin A. Jones, Senior Deputy Public Defender, argued the cause and filed the briefs for petitioner on review Makuch. With her on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Harrison Latto, Portland, argued the cause and filed the briefs for petitioner on review Riesterer.

Daniel J. Casey, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice,** and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

** Chief Justice when case was argued.

*** Chief Justice when case was decided.

RIGGS, J.

## RIGGS, J.

In these two criminal cases, we decide whether the police unlawfully obtained evidence of defendants' marijuana growing operation such that the evidence should be suppressed. The trial court suppressed that evidence under an Oregon statute, because the police had searched a lawyer's personal organizer for defendants' last names and addresses. The Court of Appeals reversed that part of the trial court's orders, concluding that the protections of the Oregon statute did not apply in defendants' cases and that the evidence should not be suppressed on any other ground. *State v. Makuch/Riesterer*, 185 Or App 298, 59 P3d 536 (2002). For the reasons that follow, we affirm the Court of Appeals, and we affirm in part and reverse in part the trial court.

The parties do not contest the facts as stated in the Court of Appeals opinion.

"The facts are complex and involve three separate searches that occurred on the same day, July 7, 1998: (1) the search of the residence of Jeffrey Husk in Portland; (2) the subsequent search of the residence of defendants' attorney, Lawrence Neal, in Vancouver, Washington, including the search of Neal's organizer/day planner, which disclosed defendants' names and addresses; and, finally, (3) the search of defendants' place of business in Milwaukie, Oregon, which revealed a marijuana grow operation. We describe the searches in sequence.

"On July 7, 1998, Officer Brian Schmautz of the Portland Police Bureau sought and obtained a warrant to search Husk's home in Portland. The affidavit in support of the warrant revealed that Schmautz had received information from an informant who had seen marijuana growing at Husk's residence. The informant told Schmautz that Husk had said that he had a partner and was involved in marijuana distribution. The informant also told Schmautz that Husk had told him that his partner would be coming to Husk's residence. Thereafter, the informant saw only one person visit the residence and wrote down the Washington state license plate number of that visitor. After the visitor left, Husk told the informant that the visitor was his partner, Larry, an attorney in Vancouver, and stated that he had traded marijuana cuttings with his partner. Schmautz

determined that the license plate was for a vehicle registered to Lawrence Neal of Vancouver, Washington.

"Schmautz went to Husk's home and talked with Husk, who eventually led Schmautz to his garage, where Schmautz observed marijuana leaves and potting soil from marijuana plants. Schmautz asked Husk for consent to search his home, and Husk responded that he could not allow a search unless he contacted his friend and attorney, Larry Neal. Schmautz then obtained a warrant to search Husk's residence, and the ensuing search yielded numerous marijuana plants, as well as a recent telephone bill that showed a call to 'L. Neal.'

"Meanwhile, Schmautz had contacted Detective Charles Drake of the Clark County, Washington, Sheriff's Office concerning Lawrence Neal. Drake applied for a warrant to search Neal's home in Vancouver for marijuana plants and related evidence. In his affidavit, Drake recounted information that he had obtained from Schmautz concerning the informant's conversations with Husk and the informant's observation of the Washington license plate. Drake's affidavit also stated that marijuana had been found in a search of Husk's residence. Finally, Drake's affidavit indicated that he had sought and received records showing that the amount of electricity used in Neal's home was significantly greater than the amount used by the previous occupant.

"While waiting for the Washington magistrate to issue the warrant, Drake received word that Husk, who was in custody, was going to be given the opportunity to make an outside call. Because he was concerned that Husk would call Neal and warn him, Drake ordered police officers to 'secure' Neal's residence pending issuance of a warrant. Those officers entered Neal's house and discovered a marijuana grow operation before the magistrate issued the warrant. The issuing magistrate was not informed, before he issued the warrant, that officers had already invaded the premises and, in doing so, had already discovered a marijuana grow operation without the benefit of a warrant.

"Thereafter, Schmautz arrived at Neal's residence and assisted the Washington officers with the execution of the warrant. Neal admitted to the police that he grew and sold marijuana. When Drake told Neal that his home was being searched because Portland police had just served a warrant

on one of his 'Oregon associates,' Neal hung his head and then blurted out, 'Paul and Leigh Ann.' Neal said that he had known 'Paul and Leigh Ann' since their arrest in Multnomah County for growing marijuana several years earlier.

"As the search progressed, Schmautz discovered Neal's 'personal organizer' in an upstairs bedroom. That 'organizer' was a zippered, book-sized looseleaf binder, which was clearly marked on the first page: 'ATTORNEY/CLIENT CONFIDENTIALITY PRIVILEGE CLAIMED ON ALL CONTENTS.' The personal organizer contained an address section that listed several 'Pauls' and 'Leigh Anns' or 'Leanns,' but only one 'Paul' and one 'Leigh Ann'—these defendants—who shared the same addresses. One of those addresses was a T-shirt business in Milwaukie, Oregon. Shortly thereafter, Neal admitted to Drake that 'Paul and Leigh Ann' had a grow operation in Clackamas County in the previous year and that he had sold them marijuana recently."

185 Or App at 300-03 (footnote omitted). That information led police to defendants' shop. They eventually obtained a search warrant for the shop, and found more than 40 growing marijuana plants. *Id.* at 303.

In the past, Neal had acted as a lawyer for both defendants. Neal's representation of defendants was not secret; Neal had, among other things, filed pleadings in court on their behalf.

The State of Washington charged Neal with crimes related to his marijuana growing operation. However, the Washington trial court suppressed all the evidence obtained from searching Neal's home, because the police had violated Neal's rights under the Washington Constitution. The court not only rejected the initial warrantless entry, it also concluded that the search warrant should not have issued, either, because the police had lacked probable cause to connect Neal's home with any criminal activity.

The State of Oregon charged defendants with manufacturing, delivering, and possessing a controlled substance. Before trial, defendants moved to suppress the evidence against them. Defendants argued, among other things, that the evidence must be suppressed because it derived from the illegal search of Neal's residence and personal organizer.

Defendants relied in part on Article I, section 9, of the Oregon Constitution.[1] But defendants also argued that ORS 9.695 required the court to suppress the evidence as the fruits of an illegal search of a lawyer's files, papers, or effects related to providing legal services.[2]

The trial court initially denied defendants' motion to suppress, concluding that the Neal search did not violate ORS 9.695 and that the circumstances surrounding the later search of defendants' shop did not justify suppression on constitutional grounds. On reconsideration, however, the trial court concluded that Neal's personal organizer qualified as "files, papers, [or] effects * * * relating to the provision of legal services" under ORS 9.695(1). The court thus suppressed the evidence under ORS 9.695(4).

The state appealed, and the Court of Appeals reversed the trial court in part. The Court of Appeals concluded that ORS 9.695 did not apply, because the exception found in ORS 9.695(2) had been met: The police had probable cause to believe that the lawyer, Neal, had committed a crime. *Makuch / Riesterer*, 185 Or App at 309. The court also held that the search of Neal's personal organizer did not invade any of defendants' protected privacy interests under Article I, section 9, of the Oregon Constitution. *Id.* at 310-11. Thus, the court held, the evidence obtained from the search of defendants' shop could not be suppressed as evidence derived

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] ORS 9.695 provides, in part:

"(1) Notwithstanding ORS 133.535, the files, papers, effects or work premises of a lawyer relating to the provision of legal service by the lawyer shall not be subject to search or seizure by any law enforcement officer, either by search warrant or otherwise.

"(2) The provisions of subsection (1) of this section do not apply where there is probable cause to believe that the lawyer has committed, is committing or is about to commit a crime.

"* * * * *

"(4) Evidence or the fruits thereof obtained in violation of this section shall be inadmissible in any criminal or civil action or proceeding * * *."

from prior unlawful police conduct. *Id.* at 312. Without discussion, the court also affirmed the trial court's conclusion that the circumstances surrounding the actual search of defendants' shop did not require that the evidence be suppressed. *Id.* We allowed review.

■        Procedurally, defendants challenge the admissibility of evidence obtained after the search of their shop pursuant to a warrant. However, defendants' main arguments deal with the earlier search at Neal's residence, not with the shop search. Defendants argue that (1) the Neal search was illegal; (2) defendants were identified only by the illegally obtained evidence from the Neal search; (3) the later search of their shop thus was a fruit of the earlier illegal Neal search; and so (4) the evidence obtained by searching their shop should be suppressed. Under the circumstances, defendants bear the initial burden to demonstrate that the search warrant had been tainted by showing a factual nexus between the warrant and an earlier illegal search or seizure. *See State v. Johnson,* 335 Or 511, 520-21, 73 P3d 282 (2003) ("assuming that the issuance of warrant was proper, if the defendant is able to show that the evidence obtained therefrom is connected to some prior governmental misconduct, * * * the burden of proof fairly may be shifted to the government to show that the evidence is not tainted by the misconduct"). However, defendants must also show that the prior illegality infringed rights that defendants are entitled to enforce. *See State v. Kosta,* 304 Or 549, 553, 748 P2d 72 (1987) (suppression appropriate only if defendant's personal rights under Article I, section 9, of Oregon Constitution have been violated); *State v. Tanner,* 304 Or 312, 315-16, 745 P2d 757 (1987) (same).

Both defendants argue that the Neal search violated ORS 9.695. In full, that statute provides:

"(1)    Notwithstanding ORS 133.535, the files, papers, effects or work premises of a lawyer relating to the provision of legal service by the lawyer shall not be subject to search or seizure by any law enforcement officer, either by search warrant or otherwise.

"(2)    The provisions of subsection (1) of this section do not apply where there is probable cause to believe that the

lawyer has committed, is committing or is about to commit a crime.

"(3)   As used in this section, 'lawyer' means a member of the Oregon State Bar or a person licensed to practice law in any court of this state or any court of record of the United States or of any state, territory or other jurisdiction of the United States.

"(4)   Evidence or the fruits thereof obtained in violation of this section shall be inadmissible in any criminal or civil action or proceeding, except for an action or suit brought for violation of this section or the rights protected thereby."

The plain text of ORS 9.695(1) does seem to apply to the search of Neal's personal organizer. We assume, for purposes of argument only, that ORS 9.695 applies to a search in Washington state.[3] No one disputes that Neal was a "lawyer" as defined by ORS 9.695(3), and Neal's personal organizer would appear to be "files, papers, [or] effects * * * relating to the provision of legal services."[4] But defendants effectively conceded that Neal's house was not his "work premises," as ORS 9.695(1) uses that term. *See Makuch/Riesterer*, 185 Or App at 309 n 8 ("The parties agreed that Neal's residence is not protected under ORS 9.695(1).").[5] Thus, ORS 9.695(1)

---

[3] Though the parties do not present the question here, defendant Riesterer contends that ORS 9.695 applies to searches in other states, because the statute broadly defines "lawyer" to include lawyers licensed in other jurisdictions, and because the statute lacks any text expressly restricting its application to Oregon.

The issue, however, is not so clear. The absence of a geographic restriction in a statute may not be dispositive. *See, e.g., Union Pac. R.R. Co. v. Anderson*, 167 Or 687, 697, 120 P2d 578 (1941) ("a law enacted by the Oregon legislature necessarily applies only to a subject within its jurisdiction, and the words, 'in Oregon,' if not expressed are necessarily implied"). And restriction to Oregon would not make the expansive definition of "lawyer" meaningless; it could be intended to protect out-of-state lawyers appearing *pro hac vice*, lawyers who live in Oregon but practice exclusively elsewhere, lawyers who have moved to Oregon but not yet been licensed to practice here, and lawyers who are otherwise only temporarily in the state.

[4] Before the Court of Appeals, the state argued that ORS 9.695(1) applies only to confidential information. As we will discuss, we need not resolve that question. Even if ORS 9.695(1) applied, the facts fall within the exception found in ORS 9.695(2).

[5] The trial court had no evidence that Neal's home was his work premises. But the trial court incorrectly found on reconsideration that Neal's home *was* his work premises. Several months had passed after the original hearing before the trial court held the hearing on reconsideration. At the reconsideration hearing, the trial court asked whether there had been evidence that Neal's home was his work premises, and one lawyer represented (incorrectly) that there had been. So the trial

applied only to the search of Neal's personal organizer to find an address for "Paul and Leigh Ann."

■ Even then, however, the exception found in subsection (2) of ORS 9.695 could have made subsection (1) inapplicable. The state focuses its argument there, so we must decide whether, when the police searched Neal's personal organizer, probable cause existed to believe that Neal had committed, was committing, or was about to commit a crime.

In interpreting ORS 9.695(2), we use the now-familiar methodology for statutory construction in which we seek the intent of the legislature by examining the statutory text in context.[6]

The term "probable cause" has a well-defined legal meaning when the legislature uses it in connection with a preliminary determination as to whether a person has committed a crime, so we use that meaning here. The legislature has provided specifically that probable cause means an objective basis to believe that something is more probable than not. *See* ORS 131.005(11) (for arrests, probable cause means "that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it"). Given that meaning, ORS 9.695(2) applies if there is an objective basis to think it more probable than not "that the lawyer has committed, is committing or is about to commit a crime."[7]

court added a new finding (that the personal organizer had been located "[w]hile searching the home/office premises of Larry Neal"), and a new conclusion of law (that the personal organizer "was the files, papers, [e]ffects on the work premises of a lawyer").

On appeal, the state argued that "there was *no evidence* that Neal ever used his home or any part thereof as a law office or to conduct legitimate work as an attorney, and thus no support for the trial court's finding." (Emphasis in original.) Neither defendant challenged that assertion. Moreover, both defendants argued the case as if ORS 9.695 applied only to the personal organizer, not to Neal's house.

The Court of Appeals, as we note in the text, ignored the trial court's erroneous finding and accepted defendants' apparent concession. Under the circumstances, we follow the Court of Appeals' approach.

[6] In 2001, the legislature amended ORS 174.020 to permit parties to offer legislative history to aid the courts in interpreting a statute. Or Laws 2001, ch 438, § 1. However, those amendments apply only to "actions commenced on or after" June 18, 2001. *Id.* at §§ 2, 3. Defendants were indicted in 1998, so ORS 174.020, as amended, does not apply.

[7] The statutory exception in ORS 9.695(2) resembles probable cause to arrest under ORS 131.005(11). But ORS 9.695(2) is the broader of the two. While ORS

The exception found in ORS 9.695(2) applies here. By the time police searched Neal's personal organizer (if not earlier), there were objective reasons to think that Neal, more probably than not, had committed a crime: A marijuana growing operation had been discovered in Neal's house, and Neal had admitted to the officers that he grew and sold marijuana. Because probable cause existed to think that Neal had committed a crime, "[t]he provisions of subsection (1) of [ORS 9.695 did] not apply" to prohibit the search of the organizer.

Defendants argue, however, that ORS 9.695(2) allows searches only when probable cause exists to think that the search will *produce evidence of the lawyer's crimes*, not just when there is probable cause to think that the lawyer committed some crime somewhere. They note that ORS 9.695(1) cross-references ORS 133.535, which describes what may be searched for or seized in this state.[8] Defendants consider ORS 133.535 to be context demonstrating the limited scope of ORS 9.695(2).[9]

Defendants' argument, however, tracks neither the text of ORS 9.695 nor its context. For those materials described by ORS 9.695, subsection (1) absolutely bars searches or seizures; the words "[n]otwithstanding ORS 133.535" merely confirm that the bar reaches everything that otherwise may be subject to search or seizure. To that absolute rule, ORS 9.695(2) creates an absolute exception: If probable cause exists to think that the lawyer has or will commit

131.005(11) requires an objective basis to think the person has already committed a crime, ORS 9.695(2) also includes future conduct—the possibility that the lawyer will commit a crime.

[8] ORS 133.535 provides, in part:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1) Evidence of or information concerning the commission of a criminal offense;

"(2) Contraband, the fruits of crime, or things otherwise criminally possessed; [and]

"(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense[.]"

[9] Defendants also make what is, in effect, a policy argument—that probable cause to suspect a lawyer of a crime should not open the door for police to search client files for evidence of completely unrelated crimes. Policy arguments that are inconsistent with the words of a statute have no place in our statutory analysis methodology, however; the Oregon Constitution entrusts such policy determinations to the legislature.

"a crime," then "[t]he provisions of subsection (1) * * * *do not apply*[.]" (Emphasis added.) So ORS 9.695 either bars searches entirely, or it does not apply at all. Nothing supports defendants' argument that the statute can "half apply"—that it will continue to bar *some* searches even when the exception of ORS 9.695(2) has been met.[10]

Because the facts meet the exception contained in ORS 9.695(2), we conclude that ORS 9.695 did not require the trial court to exclude the evidence derived from the Neal search.[11]

---

[10] But even if ORS 9.695 only permitted searches directed toward evidence of the lawyer's crime, it would not help defendants here; probable cause existed to believe that Neal had committed a crime with these defendants.

Detective Drake, the detective who interrogated Neal, testified that Neal initially denied knowing any other marijuana growers. The detective knew that was not true, because Neal had been seen at Husk's house, where there was a marijuana growing operation:

"And as a—kind of to see what he would tell me, I told him that the reason we were there was Portland police had just finished serving a search warrant at an associate of his, with a friend of his, and I left it at that to see what would happen.

"Mr. Neal kind of hung his head and didn't say anything. And then when I expected for him to say Jeffery Husk, he just blurted out the names Paul and Leigh Ann. I was surprised * * *.

"I asked him how long he had known Paul and Leigh Ann. He said about two years or right about the time they had gotten busted in Multnomah County for growing pot. He told me that he thought that was in September of '96. *And he said that the last time that Paul and Leigh Ann went to jail he was asked to attend to the marijuana grow they had in their residence.*"

(Emphasis added.) Drake confirmed that that exchange took place before he asked another officer to search for an address book to identify "Paul and Leigh Ann."

Neal's statements implicated "Paul and Leigh Ann" with committing the crimes of unlawful manufacture and unlawful possession of a controlled substance (*former* ORS 475.992(1) and (4) (1997), *renumbered as* ORS 475.840(1) and (3) (2005)). But Neal also suggested that he had taken care of their marijuana plants while they were in jail; that would mean Neal had aided or abetted those crimes. *See* ORS 161.155 (person is criminally liable for another person's crime if person, "with the intent to promote or facilitate the commission of the crime," "[a]ids or abets or agrees or attempts to aid or abet such other person in * * * committing the crime").

Thus, when police searched Neal's personal organizer for information about Paul and Leigh Ann, they had, at a minimum, probable cause to think that Neal had aided and abetted Paul and Leigh Ann in the unlawful manufacture and possession of a controlled substance.

[11] Before the Court of Appeals, defendants offered other arguments that ORS 9.695 applied. The Court of Appeals rejected them. *Makuch/Riesterer*, 185 Or App at 308-09 (rejecting defendants' arguments that Washington state court decision had issue preclusive effect and that information obtained in violation of Washington law cannot be considered in determining probable cause under ORS 9.695). Defendants do not renew those arguments on review.

■ Defendant Riesterer next argues that the evidence from the Neal search should be suppressed under Article I, section 9, of the Oregon Constitution.

■ Article I, section 9, of the Oregon Constitution, protects possessory and privacy interests against unlawful search or seizure. *Kosta*, 304 Or at 553; *Tanner*, 304 Or at 317-23. However, evidence may be suppressed only if police invaded the personal rights of the person who seeks suppression; the violation of someone else's rights is not enough. *Kosta*, 304 Or at 553 (so holding); *Tanner*, 304 Or at 315-16 (to same effect).

Here, the defendants had no possessory or privacy interest in Neal's home; they did not own it, rent it, or store any possessions in it. Defendants also did not have a possessory or privacy interest in Neal's personal organizer. *Compare State v. Cook*, 332 Or 601, 605-06, 34 P3d 156 (2001) (defendant who was next to garbage dumpster sorting clothing into duffel bag "had a possessory and privacy interest in the bag and the clothing"). And defendants had no privacy interest in the fact that they were clients of Neal, or that their names and addresses were written in Neal's personal organizer, simply because that information was not private; Neal's representation of defendants was a matter of public record, and defendants do not suggest that their names or addresses were secret or nonpublic.[12]

Defendant Riesterer does not dispute that Article I, section 9, applies only to protected privacy interests. She argues, however, that ORS 9.695 gives her a protected privacy interest under Article I, section 9, which allows her to contest the search of Neal's personal organizer. Whatever the truth of that general statement, it does not help her here. As

---

[12] For that reason, we need not decide whether we would reach a different result if a client's name, address, or the existence of the representation were secret for reasons related to the representation (*e.g.*, if the client were a domestic violence victim in hiding from an abuser, or if the lawyer were attempting to negotiate a favorable plea bargain on behalf of a client whose identity was not yet known to police).

we have already noted, ORS 9.695 does not apply. That statute, like all statutes, is as broad or as narrow as the legislature makes it. It creates a privacy interest as far as the statute extends, but no farther. Because ORS 9.695 did not apply to the search of Neal's personal organizer, then by definition ORS 9.695 did not give defendants a privacy interest in the organizer or its contents.[13]

■      Finally, both defendants argue that the Neal search violated the Fourth Amendment to the United States Constitution. However, defendants did not preserve that argument before the Court of Appeals. *See Makuch / Riesterer*, 185 Or App at 310 n 9 ("Defendants do not invoke the Fourth Amendment to the United States Constitution in this context."). Thus, we do not address it.

Defendants finally argue that, even apart from the issues related to the Neal search, the search of their shop independently violated their constitutional rights. The Court of Appeals affirmed on defendants' cross-assignment of error without discussing it. *Id.* at 312. We have evaluated defendants' arguments, and we agree with the Court of Appeals that the arguments lack merit. A detailed discussion of our reasons would be intensively fact-specific, however, and so it would not benefit the bench, bar, or public.

The decision of the Court of Appeals is affirmed. The orders of the circuit court are affirmed in part and reversed in part, and the cases are remanded to the circuit court for further proceedings.

---

[13] Defendant Riesterer also suggests that the state conceded in the Court of Appeals that defendants had a privacy interest in Neal's personal organizer. However, the state only conceded a privacy interest—or the lack of a need to show one—for purposes of ORS 9.695. The state's brief represented that "the state no longer argues that defendants need to establish a threshhold privacy interest in their attorney's 'files, papers, effects or work premises' as a prerequisite to asserting the statutory protection of ORS 9.695(1)."