Argued and submitted March 30, affirmed November 23, 2011, petition for review denied March 22, 2012 (351 Or 675)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JONATHAN KAINE SMITH,
*Defendant-Appellant.*

Jefferson County Circuit Court
07FE0142; A142178

268 P3d 644

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Stephanie L. Striffler, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant, a member of the Confederated Tribes of Warm Springs, filed a motion to suppress evidence obtained as a result of his seizure and arrest by a Madras City Police Officer who pursued defendant onto the Warm Springs Reservation, arrested him there, placed him in a Madras City Police car, and drove him to a jail off the reservation. Relying on the Warm Springs Tribal Code (WSTC) "hot pursuit" provision, WSTC 310.120, the trial court denied defendant's motion to suppress. We conclude that the trial court correctly applied WSTC 310.120 and, therefore, did not err in denying defendant's motion to suppress. Accordingly, we affirm.

"We review the denial of a motion to suppress for errors of law, and we are bound by the trial court's findings of historical facts as long as there is constitutionally sufficient evidence in the record to support those findings." *State v. Caprar*, 214 Or App 434, 439, 166 P3d 567 (2007), *rev den*, 345 Or 317 (2008).

One August summer night around midnight, Officer Rico of the Madras City Police Department received a call about a hit-and-run motor vehicle accident. Rico saw a car matching the description and license plate of the car traveling north on Highway 26. Rico initiated a stop by turning on his overhead lights. At first, it appeared that the driver of the car, defendant, was going to stop, but he then continued driving toward the Warm Springs Reservation. Rico followed the car and saw it swerve across the center line several times; Rico believed that the driver was under the influence of intoxicants. Rico contacted dispatch and requested that it inform the Warm Springs Police that the car was going toward the reservation.

Immediately inside the reservation's border, several police officers of the Confederated Tribes of Warm Springs were waiting. The tribal police officers set tack strips across the road. Defendant crossed the bridge over the Deschutes River that acts as the boundary of the reservation and drove over the tack strips, deflating his tires. Defendant's car stopped about 400 yards past the bridge into the reservation. Detective Lockey, who works for the Confederated Tribes of Warm Springs Police Department, gave verbal commands for

Rico and the other tribal police officers to perform a high-risk traffic stop; Lockey told defendant to show his hands and get out of his car.

Lockey instructed Rico to approach defendant and, when Rico approached, he smelled alcohol and noticed that defendant's speech was slurred. Rico put defendant in custody, patting him down for weapons and placing him in the back of Rico's patrol car. Rico found a tribal identification card in defendant's wallet. Rico asked Lockey for permission to continue to arrest defendant and to take defendant to the Jefferson County Jail. Lockey gave Rico permission to drive defendant to the county jail. In searching defendant's car, Rico found three empty beer cans and several full beer cans. Rico took defendant to the Jefferson County Jail. At the jail, defendant took a breath test that indicated that his blood alcohol content was .18 percent, more than double the legal limit. Defendant was charged with attempting to elude a police officer, ORS 811.540, failing to perform duties of a driver, ORS 811.700, driving under the influence of intoxicants, ORS 813.010, and reckless driving, ORS 811.140.

Defendant filed a motion to suppress, arguing that Rico did not have authority to stop or arrest defendant on the reservation and, therefore, that the court should suppress all the evidence obtained as a result of that stop and arrest. During the hearing on defendant's motion to suppress, Lockey testified that, under WSTC 310.120,

"if an officer from another jurisdiction is in hot pursuit of a vehicle * * * and if he comes over onto the Warm Springs Tribal Reservation and he is right there still in that pursuit, he has jurisdiction to arrest or cite the suspect * * * immediately after the conclusion of the stop."

Defendant argued that the court should suppress all evidence obtained as soon as he was stopped, *i.e.*, the moment that his tires were deflated by the tack strips. Alternatively, defendant argued that he was stopped when Rico put defendant in handcuffs and placed him in the back of Rico's patrol car. The court made detailed findings and concluded that, under WSTC 310.120, Rico had authority to arrest defendant on the reservation following hot pursuit. Accordingly, the court denied defendant's motion to suppress.

In his opening statement at trial, defendant conceded that he was guilty of three of the crimes—failure to perform duties of a driver, driving under the influence of intoxicants, and reckless driving—but denied that he was guilty of attempting to elude a police officer. At the conclusion of trial, the jury found defendant guilty as charged.

On appeal, defendant asserts that the trial court erred in denying his motion to suppress because a Madras Police Officer, Rico, lacked authority to seize and arrest defendant within the boundaries of the Confederated Tribes of the Warm Spring Reservation. The state contends that, under WSTC 310.120, because Rico was in hot pursuit of defendant after observing him commit crimes off the reservation, Rico had the authority to seize and arrest defendant on the reservation.[1] We agree with the state.

Article I, section 9, of the Oregon Constitution provides,

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

An arrest is a seizure of a person under Article I, section 9. *State v. Hall*, 339 Or 7, 17, 115 P3d 908 (2005).

Whether a nontribal police officer has the authority to seize and arrest a suspect on the Warm Springs Reservation following a hot pursuit is an issue of first impression in Oregon. Indian tribes have attributes of sovereign power over their members and their territory and are insulated in some respects by immunity from state control. *New Mexico v. Mescalero Apache Tribe*, 462 US 324, 332, 103 S Ct 2378, 76 L Ed 2d 611 (1982). Under 18 USC section 1162(a),

---

[1] We note that in *State v. Kurtz*, 350 Or 65, 249 P3d 1271 (2011), the Supreme Court decided the converse of the question raised here: whether a Warm Springs tribal police officer can arrest a person who commits a traffic violation on the reservation but is not stopped until after the person crosses the reservation boundary and is in Jefferson County. The Supreme Court concluded that such an arrest was proper, relying on both ORS 133.430 and WSTC 310.120. *Id.* at 79 n 10.

the Warm Springs Reservation is expressly exempt from the jurisdiction of the state. Absent a governing act of Congress, a state may not infringe on the right of the Confederated Tribes of the Warm Springs Reservation to make and be ruled by its own laws. *Mescalero Apache Tribe*, 462 US at 332. The Warm Springs Tribe has exercised its right to make its own laws and be ruled by them by enacting the WSTC.

To decide this issue, we must interpret WSTC 310.120. Our goal in interpreting statutes is to discern the intent of the drafters. *See Owens v. Maass*, 323 Or 430, 433, 918 P2d 808 (1996) (our task in interpreting statutes is to "discern the intent of the legislature"). We apply our framework for statutory construction when construing other kinds of laws as well. *See Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997) (we interpret administrative rules so as to give effect to the intent of the body that promulgated the rule); *State v. Connally*, 339 Or 583, 588, 125 P3d 1254 (2005) (we examine the text of a city ordinance in context to determine the intent of the drafters). Accordingly, we employ our usual framework for statutory construction to determine the intent of the drafters of the Warm Springs Tribal Code.

In statutory construction, we begin by examining the text and context of the statute, in light of any useful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Context includes other provisions of the statute. *Owens*, 323 Or at 435-36. If the drafters' intent remains unclear after examining text, context, and legislative history, "the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172. We may not, however, "insert what has been omitted, or * * * omit what has been inserted[.]" ORS 174.010.

Initially, we note that WSTC Chapter 310 acknowledges the overlapping jurisdictional authority of tribal and state courts in the context of traffic offenses. WSTC 310.100 defines the jurisdiction of tribal and Oregon state courts. As a general rule, the tribal courts "shall have jurisdiction over all traffic offenses committed by Indians within the external

boundaries of the Warm Springs Indian Reservation." WSTC 310.100(1)(a).[2]

Consistently with WSTC 310.100, WSTC 310.120 describes the authority of police officers of different jurisdictional authorities—state and tribal—to arrest or issue citations for traffic offenses committed in different jurisdictions. WSTC 310.120 provides:

> **Within Jurisdiction.** A police officer as defined in WSTC 310.010(13) may issue a citation to a person for a traffic offense at any place within the jurisdictional authority as outlined in WSTC 310.100 of the governmental unit by which he is authorized to act. In the case of a traffic crime, the officer may also arrest.
>
> "(1)  **Outside Jurisdiction — Hot Pursuit.** A police officer may issue a citation to a person for a traffic offense at a place outside the jurisdictional authority of the governmental unit by which he is authorized to act, if:
>
>> "(a)   A traffic offense was committed in his presence at a place within the jurisdictional authority of the governmental unit; and
>>
>> "(b)   The officer immediately pursues the person who committed the offense; and
>>
>> "(c)   The officer arrests or cites the person immediately upon the conclusion of a continuous pursuit.
>>
>> "The officer may also arrest in the case of a traffic crime."

(Boldface in original.) The introductory language of that provision states that a police officer's authority applies "within the jurisdictional authority as outlined in WSTC 310.100 of the governmental authority by which he is authorized to act." Implicitly, that is a reference to tribal and state "jurisdictional authority." WSTC 310.010(13), in turn, defines "police officer" as "a member of the Police Department of the Confederated Tribes of the Warm Springs Reservation *or any other*

---

[2] The quoted text is from the Warm Springs Tribe website, http://warmsprings.com/images/Warmsprings/Tribal_Community/Tribal_Government/Current_Governing_Body/Tribal_Code_Book/ (accessed Nov 16, 2011).

*person authorized by Tribal law to enforce the provisions of WSTC Chapters 310 and 311.*" (Emphasis added.)

Defendant argues that WSTC 310.120 does not authorize an officer who is not a member of the Warm Springs tribal police to arrest a member of a tribe on the reservation because the code defines "police officer" as a member of the tribal police. The state notes, however, that WSTC 310.010(13) also refers to "any other person authorized by Tribal law to enforce the provisions" of the tribal code and asserts that, under WSTC 310.120(1), in the context of "hot pursuit," a nontribal police officer is a "person authorized by Tribal law to enforce" tribal law, WSTC 310.010(13), within the reservation. We agree with the state.

WSTC 310.120(1) provides that, in the context of hot pursuit, a "police officer may issue a citation to a person for a traffic offense at a place *outside the jurisdictional authority of the governmental unit by which he is authorized to act * * *.*" (Emphasis added.) That provision expressly authorizes nontribal police, *i.e.*, the state, to act outside of their authorizing jurisdiction, *i.e.*, within the reservation, when in hot pursuit of a person who has committed a traffic offense within the nontribal police officer's jurisdictional authority. The hot pursuit provision thus is a context in which tribal law authorizes a nontribal police officer to enforce a provision of WSTC Chapter 310, WSTC 310.120. Consequently, we conclude that the drafters intended the section to apply both to tribal police acting outside of their jurisdictional authority and nontribal police acting outside of their jurisdictional authority. *See Kurtz,* 350 Or at 80 (holding that a Warm Springs tribal police officer is authorized to arrest a person who committed a traffic violation on the reservation but was not stopped until off the reservation).

Defendant points to the legislative history of WSTC Chapters 310 and 311 to support his argument that the drafters did not intend to give nontribal police officers authority to arrest a tribal member on the reservation. The legislative history provides:

"It was not the object of the Tribal Council to cede any jurisdiction over traffic matters to the State of Oregon, but was rather the object of the Tribal Council to expand Tribal

Court jurisdiction and to protect Tribal Court jurisdiction so as to enhance the safety and welfare of all persons on the Reservation and no jurisdiction has been ceded by the Tribes to the State of Oregon."

Legislative History of Warm Springs Traffic Code, WSTC Chapters 310 and 311, http : // warmsprings.com / images / Warmsprings / Tribal__Community / Tribal__Government/ Current__Governing__Body/Tribal__Code_Book/Doc_Files/ 310_legislativehistory.pdf (accessed Nov 16, 2011). However, WSTC 310.120 does not cede "jurisdiction." Rather, it authorizes a nontribal officer to act in limited circumstances as authorized by a provision of the tribal code within the boundaries of the reservation to apprehend suspects in some circumstances that have committed traffic offenses in *other* jurisdictions. We reject defendant's argument relying on legislative history.

Defendant next asserts that Rico was required to follow the WSTC extradition provision in order to arrest defendant. WSTC 202.135(1) provides:

"Upon receipt of a valid warrant charging an Indian with a violation of the laws of any lawful authority, or proof of the existence of such warrant, the Tribal Court shall issue an order directed to the Chief of the Warm Springs Tribal Police, instructing him that the person named shall be apprehended by a member of the Tribal Police and delivered over to the proper authority."

Defendant is correct that obtaining a warrant is one way that a nontribal officer can effectuate the arrest of a tribal member. Here, there was no valid warrant; the arrest was made pursuant to an exception to the requirement for a warrant. Because WSTC 310.120 applies, it was not necessary for Rico to follow WSTC 202.135 in order to arrest defendant.

Both parties cite cases from other jurisdictions showing that states are divided on whether nontribal police officers have the authority to arrest tribal members on reservation lands during hot pursuit for crimes committed off the reservation. *See, e.g., State v. Spotted Horse*, 462 NW2d 463, 469 (SD 1990), *cert den*, 500 US 928 (1991) (officer's actions in pursuing the defendant were a constitutional violation and, consequently, evidence obtained as a result of

unconstitutional arrest was not admissible against the defendant); *City of Farmington v. Benally*, 119 NM 496, 499, 892 P2d 629, 632, *cert den*, 119 NM 389 (1995) (arrest of a member of tribe on the Navajo reservation was illegal and court did not have jurisdiction to hear charges against defendant); *City of Cut Bank v. Bird*, 307 Mont 460, 466, 38 P3d 804, 808 (2001) (because officers relied on tribal police to transport the defendant in accordance with tribe's policy, court applied a "good faith" exception to the exclusionary rule); *State v. Lupe*, 181 Ariz 211, 214, 889 P2d 4, 7 (1994) (because tribe and state had not entered into an extradition agreement and tribe had not enacted laws regarding state's authority to arrest members of tribe following close pursuit from state lands onto reservation, arrest did not interfere with tribal sovereignty). However, none of those cases involve language similar to WSTC 310.120.[3]

We thus conclude that, under WSTC 310.120, a nontribal police officer may arrest a person for a traffic offense on the reservation, a place ordinarily outside of the officer's jurisdictional authority, if the traffic offense was committed in the officer's presence at a place within the officer's jurisdictional authority, the officer immediately pursued the person who committed the offense, and the officer cited the person immediately upon the conclusion of a continuous pursuit. Here, Rico saw defendant commit several traffic offenses in his presence off the reservation, where Rico had jurisdictional authority. Rico immediately pursued defendant and arrested him immediately upon the conclusion of the continuous pursuit. Accordingly, we conclude that the trial court did not err in denying defendant's motion to suppress evidence discovered as a result of his seizure and arrest.

Affirmed.

---

[3] In any event, decisions from other state jurisdictions are not precedent and are, at most, persuasive.