Argued and submitted August 21, 2013, reversed and remanded June 15, petition for review allowed September 27, 2016 (360 Or 422) See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES EDWARD KELLER,
*Defendant-Appellant.*

Multnomah County Circuit Court
110342882; A148749

379 P3d 545

Alice Newlin-Cushing, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

------------

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**ARMSTRONG, P. J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010. He assigns error to the trial court's denial of his motion to suppress evidence obtained after a Washington State Trooper stopped him in Oregon for traffic violations committed in Washington. We conclude that the trooper's stop of defendant was without lawful authority and thus violated Article I, section 9, of the Oregon Constitution. Accordingly, we reverse and remand.

The relevant facts are undisputed. Thompson, a Washington State Trooper, was driving an unmarked patrol car southbound on I-5 around 1:40 a.m. Just as he was entering the Interstate Bridge, Thompson saw in his rearview mirror a car approaching at high speed. The special radar in Thompson's patrol car measured the approaching car's speed at 25 miles per hour over the posted speed limit. The car then got so close to Thompson's patrol car that Thompson could no longer see the car's headlights in his rearview mirror. The car moved into the left lane and accelerated past Thompson.

Based on the Washington traffic violations of speeding and following too close, Thompson decided to initiate a stop. Thompson followed defendant with his emergency lights activated while still in Washington, intending to have defendant pull over on the freeway near the Jantzen Beach exit in Oregon. After defendant did not stop near Jantzen Beach, Thompson activated his siren and his air horn. Defendant then slowed down and got in the right lane, but continued driving. That prompted Thompson to use his public address system to tell defendant to pull over. Defendant took the next freeway exit and stopped on the shoulder of Marine Drive in Portland. Before getting out of his patrol car, Thompson asked his Washington dispatch to contact the Portland police for assistance. Thompson approached defendant and immediately noticed that defendant smelled of alcohol and had bloodshot, watery eyes, and slurred speech. Defendant told Thompson that he had consumed three beers. Thompson returned to his patrol car with defendant's identification card, requested Portland police assistance for

a possible DUII, and waited in his patrol car. Portland police officers arrived about eight to 12 minutes from the time of Thompson's first call. After an investigation, the Portland officers arrested defendant for DUII.

Before trial on the Oregon DUII charge, defendant moved to suppress the evidence obtained as a result of Thompson's traffic stop. Defendant contended that Thompson had no authority to stop defendant in Oregon for Washington traffic violations and thus the stop was an unlawful seizure in violation of Article I, section 9. The trial court assumed without deciding that Thompson did not have authority to conduct the stop. However, the court concluded that the stop did not violate Article I, section 9, because Thompson had probable cause to justify the initial traffic stop and reasonable suspicion of DUII to justify detaining defendant while waiting for Portland police to arrive. The trial court then convicted defendant of DUII after a stipulated facts trial.

On the undisputed facts in this case, we review the trial court's denial of defendant's motion to suppress for legal error. *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014).

We begin our analysis with the general proposition that, for the evidence obtained from Thompson's stop to be admissible in defendant's criminal prosecution, Thompson's stop of defendant must have complied with the requirements of Article I, section 9. In that respect, it does not matter that Thompson is a Washington Trooper. The Oregon Supreme Court has emphasized that the focus of Article I, section 9, is to protect an individual's rights in relation to the government; thus,

"[i]f the government seeks to rely on evidence in an Oregon criminal prosecution, that evidence must have been obtained in a manner that comports with the protections given to the individual by Article I, section 9, of the Oregon Constitution. It does not matter *where* that evidence was obtained (in-state or out-of-state), or *what* governmental entity (local, state, federal, or out-of-state) obtained it; the constitutionally significant fact is that the Oregon government seeks to use the evidence in an Oregon criminal prosecution."

*State v. Davis*, 313 Or 246, 254, 834 P2d 1008 (1992) (emphasis in original). Because the state seeks to introduce evidence in a criminal prosecution of defendant that derived from Thompson's stop of defendant, we must confront whether Thompson's stop and detention of defendant in Oregon comported with Article I, section 9.

Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." Thus the right protected by Article I, section 9, is the right of the people to be secure from unreasonable searches and seizures. However, the provision does not, of itself, confer any authority on any person to effect a warrantless seizure of a person in Oregon. That authority must come from another source, such as the established common law or an Oregon statute. *Compare State v. Meyer*, 183 Or App 536, 548, 53 P3d 940 (2002) (reversing traffic conviction where Oregon State Police officer lacked statutory authority to stop defendant in Washington for a traffic violation observed in Oregon), *and State v. Pepper*, 105 Or App 107, 108, 803 P2d 1213 (1990) (reversing convictions where state provided no authority for Oregon police officer to pursue and arrest the defendant in Washington), *with State v. Smith*, 246 Or App 614, 623, 268 P3d 644 (2011), *rev den*, 351 Or 675 (2012) (affirming conviction where tribal code "hot pursuit" provision authorized city police officer to pursue and stop the defendant for a traffic offense on the reservation).

The state concedes on appeal that Thompson lacked statutory authority to pursue and stop defendant in Oregon, and we agree that there is no affirmative authority in Oregon's statutes for an out-of-state officer to pursue and stop a motorist in Oregon for out-of-state traffic violations.[1] Likewise, Thompson lacked authority under the common

---

[1] ORS 133.430 provides authorization for an out-of-state police officer in fresh pursuit of a suspect to continue into Oregon "to arrest the person on the ground that the person is believed to have committed a felony in the other state." Likewise, if Thompson could be said to be acting as a private citizen, he would have had authority under ORS 133.225(1) to arrest defendant only for a crime. Here, Thompson believed that defendant had committed only traffic violations at the time of his stop of defendant and thus neither of those statutes could apply.

law to stop defendant in Oregon. At common law, a police officer generally had no authority to act outside the governmental unit employing the officer. *See State v. Huffman*, 49 Or App 823, 826, 621 P2d 78 (1980) (under traditional "bailiwick" rule, "police officers are authorized only to act within the boundaries of the governmental unit employing them"). The limited exception to that general rule allowed officers in "fresh pursuit" of a suspected felon who had committed a crime in the officer's jurisdiction to pursue and make a warrantless arrest of that person outside the officer's jurisdiction. *See, e.g., State v. Barker*, 143 Wash 2d 915, 921, 25 P3d 423, 425-26 (2001) (noting common-law exception for fresh pursuit of a person who committed a felony); *Stevenson v. State*, 287 Md 504, 509-10, 413 A2d 1340 (1980) (same); *People v. Durham*, 71 Ill App 3d 725, 726, 390 NE2d 517 (1979) (same). Thus, at common law, probable cause, in the absence of fresh pursuit of a suspected felon, was not an independent source of authority for an officer to act in his or her official capacity outside the officer's jurisdiction. The Oregon legislature has codified a version of the common-law fresh-pursuit rule, ORS 133.430, but, as noted, 278 Or App at 763 n 1, Thompson's conduct did not fall within the authorization of that statute.

Our inquiry thus reduces to whether Thompson's lack of authority to stop defendant in Oregon, under the circumstances presented here, constitutes a violation of Article I, section 9, because the stop was "unreasonable." The state argues that, because Thompson had probable cause to stop defendant for traffic violations and developed reasonable suspicion of DUII during the stop, the seizure of defendant was lawful under Article I, section 9. The state characterizes the deficiency in Thompson's authority for the stop as only having exceeded the authority granted to him by Oregon statute and emphasizes that whether a seizure is constitutional is not measured by statutory standards.

The state's argument, however, does not confront what is afoot in this case. Thompson did not merely violate an Oregon statute, which would not provide a basis for the suppression of evidence. *See* ORS 136.432. Thompson acted without authority of law because, as an out-of-state officer, he had no authority to act in Oregon. This is not a case in

which statutory standards stricter than those imposed by the constitution were violated; this is a case in which there has never been a lawful basis for the stop that Thompson made of defendant in Oregon. *Cf. State v. Atkinson*, 298 Or 1, 8-9, 688 P2d 832 (1984) ("Lawful impoundment of a vehicle is a necessary prerequisite to an inventory of its contents by the government or its agents. * * * If the government agents had no authority to take custody of the property, then there can be no lawful intrusion into it. The inquiry [under Article I, section 9] ends there.").

The touchstone for Article I, section 9, is reasonableness. *State v. Fair*, 353 Or 588, 602, 302 P3d 417 (2013). That concept of reasonableness logically presupposes that the police effecting a search or seizure based on probable cause are exercising their lawful authority to act in their official capacity as the police. When Thompson stopped defendant for traffic violations in Oregon, he acted beyond his jurisdiction and was thus not exercising his lawful authority as a Washington State Trooper. As a result, Thompson's unlawful seizure of defendant was just as unreasonable as a traffic stop made without the requisite probable cause. Because Thompson's unlawful stop of defendant violated Article I, section 9, the evidence derived from that stop must be suppressed.[2] Accordingly, the trial court erred when it

---

[2] The dissent suggests that, but for *Davis*, Thompson's stop of defendant in Oregon for traffic violations that defendant had committed in Washington could be viewed as a stop made by a private citizen, which would not require suppression of the evidence obtained as a result of the stop. 278 Or App at 767 (Hadlock, C. J., dissenting). The flaw in that reasoning is that defendant stopped only after Thompson used his patrol car's lights, siren, and public address system to direct defendant to pull over. The means used by Thompson to stop defendant are not the means that a private citizen would or could use to stop a person for a traffic violation, and defendant did not stop because a private citizen had directed him to do that. *See* ORS 816.360 (traffic violation to use prohibited police vehicle lighting); ORS 815.225 (traffic violation to use a siren on a vehicle); ORS 815.230 (traffic violation to equip a vehicle with siren); ORS 815.232 (traffic violation to use sound amplification on a vehicle).

The dissent also asserts that the stop of defendant for traffic violations would have been lawful if made by an Oregon peace officer, so, under *Davis*, the stop did not violate Article I, section 9. 278 Or App at 769-70 (Hadlock, C. J., dissenting). The dissent is wrong. There is no authority under Oregon law for an Oregon peace officer to stop a person for traffic violations committed by the person in Washington. Such a stop would be unreasonable under Article I, section 9, even if the Oregon officer had probable cause to believe that the person had committed the Washington violations. *Cf. Meyer*, 183 Or App at 548 (reversing traffic

denied defendant's motion to suppress evidence obtained from Thompson's stop of defendant.

Reversed and remanded.

**HADLOCK, C. J.,** dissenting.

The majority holds that evidence seized following a traffic stop that was justified by probable cause nonetheless must be suppressed because the Washington law enforcement officer who effected the stop did not have authority to conduct that stop in Oregon. I respectfully dissent.

To recap the undisputed facts: Thompson, a Washington State Trooper, developed probable cause to stop defendant for traffic violations while the trooper and defendant were both in Washington, heading south on Interstate 5.[1] Thompson signaled defendant to stop while they still were both in Washington, but—because they were on the Interstate Bridge—Thompson intended that defendant would not pull over until they were in Oregon. And, indeed, that is what happened.

The majority correctly observes, as the state acknowledges, that Thompson did not have authority to conduct a traffic stop in Oregon, at least under the circumstances present here. Relying on *State v. Davis*, 313 Or 246, 834 P2d 1008 (1992), the majority asserts that, because Thompson was *a* governmental actor (although not an Oregon state actor), evidence obtained during his stop of defendant must be suppressed if that stop did not comport with Article I, section 9. 278 Or App at 762-63. The majority concludes that—even though the stop was supported by probable cause—it violated Article I, section 9, because Thompson "acted without authority of law because, as an out-of-state officer, he had no authority to act in Oregon." 278 Or App at 764. I disagree for the reasons that follow.

Because Thompson lacked authority to conduct the traffic stop in Oregon, one could analyze the Article I,

---

conviction where Oregon State Police officer lacked authority to stop defendant in Washington for traffic violations observed in Oregon).

[1] In his brief on appeal, defendant acknowledges that he "does not argue that Thompson did not have probable cause to support the stop."

section 9, issue by treating Thompson as a private citizen. That is, one might reason that Thompson's actions should be treated as they would be if performed by an individual who had no law-enforcement authority whatsoever. If Thompson's actions were viewed in that light, his stop of defendant would not provide a basis for suppressing evidence under Article I, section 9. *See State v. Sines*, 359 Or 41, 50, 379 P3d 502 (2016) ("It is axiomatic *** that Article I, section 9, applies only to government-conducted or directed searches and seizures, not those of private citizens.").

*Davis*, however, counsels against such an approach. *Davis* involved a murder prosecution in which Mississippi law enforcement officers arrested the defendant in Mississippi. 313 Or at 247. The Mississippi officers arrested the defendant after entering the home in which he was located; they had neither a search warrant nor consent authorizing that entry. *Id.* Rather, those officers arrested the defendant "under a fugitive warrant, issued in Mississippi, that was based on underlying arrest warrants issued in Oregon." *Id.* Portland police officers questioned the defendant in Mississippi following that arrest. *Id.* The trial court suppressed the statements the defendant made during that questioning, ruling that the statements were "the product of an unlawful arrest" because the Mississippi officers had lacked authority to enter the home where they arrested the defendant. *Id.* at 248-49. The Supreme Court ultimately rejected that analysis on the ground that the Mississippi officers, in arresting the defendant, "were executing a valid arrest warrant" that justified the entry into the home. *Id.* at 249.

In the course of reaching that conclusion, however, the Supreme Court first addressed "whether the protections of Article I, section 9, of the Oregon Constitution apply in an Oregon prosecution that seeks to rely on evidence obtained as a result of the actions of out-of-state law enforcement officers while in another state, when those actions would violate Article I, section 9, if committed by Oregon law enforcement officials in Oregon." *Id.* at 251-52. The court reasoned that, in such a situation, "[t]he standard of governmental conduct and the scope of the individual rights protected by Article I, section 9, are precisely the same as those that would apply to a search by Oregon police in Oregon." *Id.* at 253. Thus,

the court concluded, if the Mississippi officers' entry into the defendant's home would have violated Article I, section 9, had it occurred in Oregon, evidence obtained as a result of that entry would have to be suppressed. *Id.* at 254.

Applying that reasoning to the facts of this case, I would ask whether Thompson's actions would have violated "the standard of governmental conduct" or violated "the scope of [defendant's] rights" had those actions been performed "by Oregon police in Oregon." *Id.* at 253. The answer is that they would not. An Oregon police officer does not violate Article I, section 9, by performing a traffic stop that is justified by probable cause to believe that the driver has committed traffic violations. Accordingly, I would hold that suppression is not required.

In holding otherwise, the majority focuses exclusively on Thompson's lack of authority to conduct a traffic stop in Oregon. It concludes, essentially, that stops are unreasonable for purposes of Article I, section 9, if they are conducted by police officers who are not "exercising their lawful authority to act in their official capacity as the police." 278 Or App at 765. I disagree with that approach for two reasons.

First, Thompson's lack of authority does not meaningfully distinguish this case from others that involve actions that officers take without statutory authority, yet within the bounds of what is permissible under Article I, section 9. I begin by considering Oregon officers' authority. The legislature has conferred authority on Oregon law enforcement officers to take certain actions only in specified, statutorily delineated circumstances, many of which are described in ORS chapters 133 and 810. *See, e.g.*, ORS 133.235 (identifying circumstances under which a peace officer may arrest a person and identifying certain actions the officer may and must take in the course of making an arrest); ORS 810.410(2), (3) (generally specifying the circumstances under which a police officer may issue a traffic citation and the scope of the officer's authority during a traffic stop). Any Oregon police officer may be said, in some sense, to act outside his or her lawful authority if the officer

violates a statute that, for example, "circumscribe[s] the authority of the police" with respect to actions they may take during the course of traffic stops. *State v. Rodgers/ Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010). When an officer breaches those statutorily defined limits, the officer is acting outside the scope of authority that the legislature has conferred. Yet, under ORS 136.432, the officer's breach of those statutory limits on authority does not provide a basis for suppression unless the officer's actions violate Article I, section 9, for a different reason. *Id.* at 620-21 (citing ORS 136.432).[2]

Similarly, the legislature has also specified certain circumstances in which Washington law enforcement officers have (and do not have) authority to effect arrests and to take other actions in Oregon. *See, e.g.*, ORS 133.430 (authorizing officers from certain other jurisdictions to enter Oregon in "fresh pursuit" of a person believed to have committed a felony). I see no reason why suppression should follow simply because a Washington officer has exceeded his or her statutory authority in Oregon, when, under ORS 136.432, that is not the result when an Oregon officer does the same thing.

My second reason for rejecting the majority's approach is that it departs from the principles underlying *Davis*. As explained above, it is only because of *Davis* that Thompson's actions are subject to Article I, section 9, at all. That is, if not for *Davis*, and its general admonition that Article I, section 9, protects individuals against certain actions committed by *any* government actor—even those with no connection to Oregon—Thompson's acts would be viewed as private action that could not form the basis for suppression under Article I, section 9. *See Sines*, 359

---

[2] ORS 136.432 provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution;

"(2) The rules of evidence governing privileges and the admission of hearsay; or

"(3) The rights of the press."

Or at 50 ("Article I, section 9, applies only to government-conducted or directed searches and seizures, not those of private citizens."). As I understand the point of *Davis*, it is that Article I, section 9, requires courts to treat the actions of officers from jurisdictions other than Oregon precisely as courts would treat those actions had they been performed by Oregon officers. *Davis* identifies no other circumstance in which the actions of a non-Oregon officer can be said to violate Article I, section 9.

Here, it is undisputed that the law enforcement officer who stopped defendant for traffic infractions had probable cause to believe that defendant had committed those infractions. In my view, it follows that defendant's right to be free from unreasonable searches and seizures under Article I, section 9, has not been violated. It makes no difference that a Washington officer conducted the stop because, under *Davis*, the question is whether the stop would have violated Article I, section 9, had an Oregon officer conducted it. *See Davis*, 313 Or at 253 ("The standard of governmental conduct and the scope of the individual rights protected by Article I, section 9, are precisely the same [when non-Oregon officers conduct a search] as those that would apply to a search by Oregon police in Oregon."). And, even if the question is better framed as asking whether the stop would have violated Article I, section 9, had an Oregon officer *acting outside his statutory authority* conducted it, the answer still would be "no," as long as the stop was supported by probable cause. ORS 136.432; *Rodgers/Kirkeby*, 347 Or at 620-21.

I respectfully dissent.